Joshua B. Cooley (AK#1409065)
Katherine Elsner (AK#1411116)
**EHRHARDT, ELSNER & COOLEY**
215 Fidalgo Ave, Suite 201
Kenai AK 99611
Phone: (907) 283-2876
Fax: (907) 283-2896
josh@907legal.com
katie@907legal.com

*[Additional Counsel Listed on Signature Page]*
***Attorneys for the Plaintiff and Putative Class***



Received in the Alaska Trial Courts on 10/10/2025.

### IN THE SUPERIOR COURT FOR THE STATE OF ALASKA
### THIRD JUDICIAL DISTRICT AT ANCHORAGE

**DARRYL HOY, LAURA JEAN WACHHOLZ**, and **LEW DIGGS**, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

**ANCHORAGE NEIGHBORHOOD HEALTH CENTER, INC.**,

Defendant.

No. 3AN-25-09106CI

### FIRST AMENDED CLASS ACTION COMPLAINT

Darryl Hoy, Laura Jean Wachholtz and Lew Diggs (collectively "Plaintiffs"), through their attorneys, individually and on behalf of all others similarly situated, bring this Amended Class Action Complaint ("Complaint") against Defendant Anchorage Neighborhood Health Center, Inc. ("Anchorage Neighborhood Health Center" or "Defendant"), and its present, former, or future direct and indirect parent companies, subsidiaries, affiliates, agents, and/or other related entities.

*Hoy v. Anchorage Neighborhood Health Center, Inc.*
FIRST AMENDED COMPLAINT
Case No. 3AN-25-09106CI

Page 1

Case 3:25-cv-00298-HRH    Document 1-1    Filed 10/23/25    Page 1 of 89    Exhibit A
Page 1 of 39

Received in the Alaska Trial Courts on 10/10/2025.

Plaintiffs allege the following on information and belief—except as to his own actions, counsel's investigations, and facts of public record.

<h3 style="text-align:center">NATURE OF ACTION</h3>

1.      This class action arises from Defendant's failure to protect highly sensitive data.

2.      Defendant is a healthcare provider and "one of Alaska's largest and most comprehensive primary care medical and dental practices."[1]

3.      As such, Defendant stores a litany of highly sensitive personal identifiable information ("PII") and protected health information ("PHI")—together "PII/PHI"—about its current and former patients. But Defendant lost control over that data when cybercriminals infiltrated its insufficiently protected computer systems in a data breach (the "Data Breach").

4.      It is unknown for precisely how long the cybercriminals had access to Defendant's network before the breach was discovered. In other words, Defendant had no effective means to prevent, detect, stop, or mitigate breaches of its systems—thereby allowing cybercriminals unrestricted access to its current and former patients' PII/PHI.

5.      On information and belief, cybercriminals were able to breach Defendant's systems because Defendant failed to adequately train its employees on cybersecurity and failed to maintain reasonable security safeguards or protocols to protect the Class's PII/PHI. In short, Defendant's failures placed the Class's PII/PHI in a vulnerable position—rendering them easy targets for cybercriminals.

6.      Plaintiffs are Data Breach victims. They bring this class action on behalf of themselves, and all others harmed by Defendant's misconduct.

---

[1] *About*, ANHC, https://www.anhc.org/about (last visited Sept. 17, 2025).

*Hoy v. Anchorage Neighborhood Health Center, Inc.*
FIRST AMENDED COMPLAINT
Case No. 3AN-25-09106CI                                                      Page 2

7.      The exposure of one's PII/PHI to cybercriminals is a bell that cannot be unrung. Before this data breach, its current and former patients' private information was exactly that—private. Not anymore. Now, their private information is forever exposed and unsecure.

## PARTIES

8.      Plaintiff, Darryl Hoy, is a natural person and citizen of Anchorage, Alaksa, where he intends to remain.

9.      Plaintiff, Laura Jean Wachholtz, is a natural person and citizen of Alaska.

10.     Plaintiff, Lew Diggs, is a natural person and citizen of Alaska.

11.     Defendant, Anchorage Neighborhood Health Center, Inc., is a nonprofit corporation incorporated in Alaksa and with its principal place of business at 4951 Business Park Blvd, Anchorage, Alaksa 99503.

## JURISDICTION AND VENUE

12.     This Court has subject matter jurisdiction over this action under the AS § 22.10.020.

13.     This Court has personal jurisdiction over Defendant because it is headquartered in Alaksa, incorporated in Alaksa, and regularly conducts business in Alaksa.

14.     Venue is proper in this Court under AS § 22.10.030 and Alaska Civil Rule 3(c) and because Defendant's principal office is in this County, and because a substantial part of the events, acts, and omissions giving rise to Plaintiffs' claims occurred in this County.

## BACKGROUND

***Defendant Collected and Stored the PII/PHI of Plaintiffs and the Class***

*Hoy v. Anchorage Neighborhood Health Center, Inc.*
FIRST AMENDED COMPLAINT
Case No. 3AN-25-09106CI                                                                                  Page 3

15.     Defendant is a healthcare provider and "one of Alaska's largest and most comprehensive primary care medical and dental practices."[2]

16.     As part of its business, Defendant receives and maintains the PII/PHI of thousands of its current and former patients.

17.     In collecting and maintaining the PII/PHI, Defendant agreed it would safeguard the data in accordance with its internal policies, state law, and federal law. After all, Plaintiffs and Class Members themselves took reasonable steps to secure their PII/PHI.

18.     Under state and federal law, businesses like Defendant have duties to protect its current and former patients' PII/PHI and to notify them about breaches.

19.     Defendant recognizes these duties, declaring in its "New Patient Registration Form" that:

    a.    "We are required by law to maintain the privacy of your protected health information (PHI)."[3]

    b.    "We are also required to notify you of our legal duties and privacy practices regarding your health information and abide by the practices of our Notice unless more stringent laws or regulations apply."[4]

    c.    "Pre- and post-procedure photos, images, and/or videos may be taken of the treatment for healthcare record purposes. I understand that these photos,

---

[2] *About*, ANHC, https://www.anhc.org/about (last visited Sept. 17, 2025).
[3] *New Patient Registration Form*, ANHC (Aug. 4, 2023)
https://static1.squarespace.com/static/664615014c50604670851991/t/67002e6c02e9f74149a4a673/1728065134080/New+Patient+Packet+English+Rev+10%3A2024.pdf.
[4] *Id.*

*Hoy v. Anchorage Neighborhood Health Center, Inc.*
FIRST AMENDED COMPLAINT
Case No. 3AN-25-09106CI                                                                 Page 4

images, and/or videos will be the property of ANHC and will be protected in accordance with applicable federal and state privacy laws."[5]

    d.    "ANHC follows current industry standards and guidelines regarding the protection of patient privacy[.]"[6]

    e.    "ANHC Protected Health Information Policy. Protected health information (PHI) includes demographic information, health history, test results, insurance information, and more. We will only disclose your PHI to other parties with your written permission."[7]

    f.    "How long does the PHI Disclosure Agreement last? This PHI disclosure agreement will remain in effect unless we receive written notice from you. You may make changes to your PHI disclosure agreement at any time."[8]

20.    Similarly, Defendant declares in its "Notice of Privacy Practices" that:

    a.    "This notice explains how medical information about you may be used and disclosed[.]"[9]

    b.    "We are required to: keep your protected information private . . . give you this notice of privacy practices . . . follow the terms of this notice."

---

[5] *Id.*

[6] *Id.*

[7] *Id.*

[8] *Id.*

[9] *Notice of Privacy Practices*, ANHC, https://static1.squarespace.com/static/664615014c50604670851991/t/664ca06119433b47d3961b cf/1716297826086/Notice%2Bof%2BPrivacy%2BPractices%2BENGLISH%2B9-22-23.pdf (last visited Sept. 17, 2025).

*Hoy v. Anchorage Neighborhood Health Center, Inc.*
FIRST AMENDED COMPLAINT
Case No. 3AN-25-09106CI                        Page 5

Received in the Alaska Trial Courts on 10/10/2025.

c.   "ANHC respects your privacy and understands that your personal health information is very sensitive."[10]

d.   "We will not disclose your information to others unless you give us permission to do so, or unless the law allows or requires us to do so."[11]

### Defendant's Data Breach

21.   In or around August 2025, Defendant was hacked in the Data Breach.[12]

22.   Indeed, on September 5, 2025, Alaska's News Source reported that:

a.   "A spokesperson for the Anchorage Neighborhood Health Clinic confirmed clinic leaders are investigating an anonymous hacker group's claim that 10,000 patient records — including information such as addresses, social security numbers, driver's licenses and insurance information — have been leaked onto the internet."[13]

b.   "In a statement Thursday, ANHC Director of Communications Ahliil Saitanan said the center is 'actively investigating this matter with the support of law enforcement and national cybersecurity experts.'"[14]

c.   "An ANHC patient who appeared on the list — requesting to be referred to as 'Elizabeth' out of fear of more people accessing her personal information — told Alaska's News Source the hackers had contacted her with her

---

[10] *Id.*

[11] *Id.*

[12] Wil Courtney, *Hackers claim 10,000 Anchorage health center patient records hacked & leaked, as center confirms investigation*, ALASKA'S NEWS SOURCE (Sep. 5, 2025, at 6:10 PM CDT) https://www.alaskanewssource.com/2025/09/05/hackers-claim-10000-anchorage-health-center-patient-records-hacked-leaked-center-confirms-investigation/.

[13] *Id.*

[14] *Id.*

*Hoy v. Anchorage Neighborhood Health Center, Inc.*
FIRST AMENDED COMPLAINT
Case No. 3AN-25-09106CI                                                                   Page 6

Received in the Alaska Trial Courts on 10/10/2025.

sensitive information. Elizabeth shared a letter she said ANHC sent her confirming there 'may' have been a data breach."[15]

    d.    "Elizabeth said the hacker group personally emailed her with her social security number, mailing address, phone number and email address."[16]

    e.    "'My information is clearly compromised,' Elizabeth told Alaska's News Source. 'Whoever has access to my information clearly knows that I go to Anchorage Neighborhood Health Center, which lends some credence to the idea that is where the data breach is.'"[17]

23.    Then, on September 15, 2025, Alaska's News Source reported that:

    a.    "Days after an anonymous hacker group claimed they had leaked an additional 50,000 Anchorage Neighborhood Health Center patient records, an FBI spokesperson confirmed Monday they are aware of the claim."[18]

    b.    "'The FBI Anchorage Field Office is aware of the alleged data breach affecting the Anchorage Neighborhood Health Center and takes allegations of this nature seriously,' Chloe Martin, FBI Anchorage Public Affairs officer, said in a statement."[19]

---

[15] *Id.*

[16] *Id.*

[17] *Id.*

[18] Wil Courtney, *FBI 'aware' of Anchorage health clinic data breach as hackers claim 60K patients impacted*, ALASKA'S NEWS SOURCE (Sep. 15, 2025, at 9:14 PM CDT) https://www.alaskasnewssource.com/2025/09/16/fbi-aware-anchorage-health-clinic-data-breach-hackers-claim-60k-patients-impacted/.

[19] *Id.*

*Hoy v. Anchorage Neighborhood Health Center, Inc.*
FIRST AMENDED COMPLAINT
Case No. 3AN-25-09106CI                               Page 7

    c.      "Alaska's News Source first reported on Sept. 5 how the group claimed to have stolen 10,000 patient records. If the group's claims are accurate, it would increase the number of compromised patients to 60,000."[20]

    d.      "The center added in the email, which confirmed the breach, it was also 'aware that the unauthorized party has contacted some individuals in our community.'"[21]

    e.      "Gina Romero, Anchorage Police Department Community Relations director, said there was at least one report filed on either of the hackers' claims."[22]

24.     Thus far, Defendant has revealed the following:

    a.      "Anchorage Neighborhood Health Center ("ANHC") recently became aware of a data security incident occurring on our network."[23]

    b.      "We are working with third-party cybersecurity experts to conduct a comprehensive investigation into the nature and scope of the incident, and we have also notified law enforcement."[24]

    c.      "The investigation is ongoing, and we are still working to determine the exact information that may have been accessed."[25]

---

[20] *Id.*
[21] *Id.*
[22] *Id.*
[23] *Security Incident Updates*, ANHC, https://www.anhc.org/security-incident-updates (last visited Sept. 17, 2025).
[24] *Id.*
[25] *Id.*

*Hoy v. Anchorage Neighborhood Health Center, Inc.*
FIRST AMENDED COMPLAINT
Case No. 3AN-25-09106CI                            Page 8

Received in the Alaska Trial Courts on 10/10/2025.

d.  "We encourage all patients to remain vigilant by monitoring financial accounts, reviewing credit reports, and remain cautious of unsolicited communications requesting personal information."[26]

e.  "ANHC is aware that the unauthorized party has contacted some individuals in our community. Please do not respond to or engage with any emails you may have received from the unauthorized party."[27]

25. To make matters worse, the anonymous hacker group succeeded in "encrypting 97 virtual machines and stealing 23.14 TB of data affecting about 200,000 people."[28]

26. On August 29, 2025, at 3:21 PM, the anonymous hacker group established a "ANHC Leak Site" on the Dark Web.[29] Since then, "[a]t least 10,000 patient records with SSNs, licenses, and insurance details have been leaked."[30]

27. Furthermore, the anonymous hacker group revealed that:

a.  "Data Volume 23.14 TB"[31]

b.  "Status Encrypted & Exfiltrated ~200k PII data leak pending"[32]

c.  "News 29 Ağu [sic] 2025 The exfiltration has started. The first batch of 100 SSNs and personal records has been published. Patients have been notified."

d.  "On Aug 23, ANHC Hospital systems were compromised."[33]

---

[26] *Id.*
[27] *Id.*
[28] Hackmanac (@H4ckmanac), X (Sept. 10, 2025, 2:10 AM) https://x.com/H4ckmanac/status/1965674197197201471.
[29] *Id.*
[30] *Id.*
[31] *Id.*
[32] *Id.*
[33] *Id.*

*Hoy v. Anchorage Neighborhood Health Center, Inc.*
FIRST AMENDED COMPLAINT
Case No. 3AN-25-09106CI                                                      Page 9

e.  "Core servers were encrypted and data exfiltrated."[34]

f.  "These systems store sensitive records and confidential information."[35]

28. A screenshot of the Dark Web post is provided below.[36]



29. Thus, on information and belief, the Data Breach exposed at least the following types of PII/PHI: names, Social Security numbers, mailing addresses, phone numbers, email addresses, government identification numbers, financial account information, health insurance information, and medical information (e.g., symptoms, diagnoses, treatment, photographs).

---

[34] *Id.*

[35] *Id.*

[36] *Id.*

*Hoy v. Anchorage Neighborhood Health Center, Inc.*
FIRST AMENDED COMPLAINT
Case No. 3AN-25-09106CI                                          Page 10

30. Defendant failed its duties. when its inadequate security practices caused the Data Breach. In other words, Defendant's negligence is evidenced by its failure to prevent the Data Breach and stop cybercriminals from accessing the PII/PHI. And thus, Defendant caused widespread injury and monetary damages.

31. Further, the Notice of Data Breach shows that Defendant cannot—or will not— determine the full scope of the Data Breach, as Defendant has been unable to determine precisely what information was stolen and when.

32. Defendant has done little to remedy its Data Breach. True, Defendant has offered some victims credit monitoring and identity related services. But upon information and belief, such services are wholly insufficient to compensate Plaintiffs and Class Members for the injuries that Defendant inflicted upon them.

33. Because of Defendant's Data Breach, the sensitive PII/PHI of Plaintiffs and Class Members was placed into the hands of cybercriminals—inflicting numerous injuries and significant damages upon Plaintiffs and Class Members.

34. Under AS § 45.48.010, the Data Breach constitutes a "breach of the security" which requires that Defendant "make the disclosure required . . . in the most expeditious time possible and without unreasonable delay[.]"

35. Moreover, AS § 45.48.080 provides that a violation is "an unfair or deceptive act or practice under AS 45.50.471 — 45.50.561[.]"

***Plaintiffs' Experiences and Injuries***

36. Plaintiffs are current and long-term patients of Defendant.

37. As a result, Plaintiffs were injured by Defendant's Data Breach.

*Hoy v. Anchorage Neighborhood Health Center, Inc.*
FIRST AMENDED COMPLAINT
Case No. 3AN-25-09106CI                                                                 Page 11

38.     Plaintiffs are very careful about the privacy and security of their PII/PHI. They do not knowingly transmit their PII/PHI over the internet in an unsafe manner.  They are careful to store any documents containing their PII/PHI in a secure location.

39.     Plaintiffs provided their PII/PHI to Defendant and trusted the company would use reasonable measures to protect it according to Defendant's internal policies, as well as state and federal law. Defendant obtained and continues to maintain Plaintiffs' PII/PHI and has a continuing legal duty and obligation to protect that PII/PHI from unauthorized access and disclosure.

40.     Plaintiffs reasonably understood that a portion of the funds paid to Defendant would be used to pay for adequate cybersecurity and protection of PII/PHI.

41.     On information and belief, Plaintiff's PII/PHI has already been published—or will be published imminently—by cybercriminals on the Dark Web.

42.     Through its Data Breach, Defendant compromised Plaintiffs' PII/PHI.

43.     Plaintiffs have spent—and will continue to spend—significant time and effort monitoring their accounts to protect themselves from identity theft. After all, Defendant directed Plaintiffs to take those steps in its breach notice.

44.     And in the aftermath of the Data Breach, Plaintiffs suffered from a spike in spam and scam text messages and phone calls.

45.     Plaintiffs fear for their personal financial security and worry about what information was exposed in the Data Breach.

46.     Because of Defendant's Data Breach, Plaintiffs have suffered—and will continue to suffer from—anxiety, sleep disruption, stress, fear, and frustration. Such injuries go far beyond allegations of mere worry or inconvenience. Rather, Plaintiffs' injuries are precisely the type of injuries that the law contemplates and addresses.

*Hoy v. Anchorage Neighborhood Health Center, Inc.*
FIRST AMENDED COMPLAINT
Case No. 3AN-25-09106CI                                                                           Page 12

Received in the Alaska Trial Courts on 10/10/2025.

47.     Plaintiffs suffered actual injury from the exposure and theft of their PII/PHI—which violates his rights to privacy.

48.     Plaintiffs suffered actual injury in the form of damages to and diminution in the value of their PII/PHI. After all, PII/PHI is a form of intangible property—property that Defendant was required to adequately protect.

49.     Plaintiffs suffered imminent and impending injury arising from the substantially increased risk of fraud, misuse, and identity theft—all because Defendant's Data Breach placed Plaintiff's PII/PHI right in the hands of criminals.

50.     Because of the Data Breach, Plaintiffs anticipate spending considerable amounts of time and money to try and mitigate their injuries.

51.     Today, Plaintiffs have a continuing interest in ensuring that their PII/PHI—which, upon information and belief, remains backed up in Defendant's possession—is protected and safeguarded from additional breaches.

***Consumers Prioritize Data Security***

52.     In 2024, the technology and communications conglomerate Cisco published the results of its multi-year "Consumer Privacy Survey."[37] Therein, Cisco reported the following:

> a.     "For the past six years, Cisco has been tracking consumer trends across the privacy landscape. During this period, privacy has evolved from relative obscurity to a customer requirement with more than 75% of consumer

---

[37] *Privacy Awareness: Consumers Taking Charge to Protect Personal*, CISCO, https://www.cisco.com/c/dam/en_us/about/doing_business/trust-center/docs/cisco-consumer-privacy-report-2024.pdf (last visited March 19, 2025).

*Hoy v. Anchorage Neighborhood Health Center, Inc.*
FIRST AMENDED COMPLAINT
Case No. 3AN-25-09106CI                                                          Page 13

respondents saying they won't purchase from an organization they don't trust with their data."[38]

    b.    "Privacy has become a critical element and enabler of customer trust, with 94% of organizations saying their customers would not buy from them if they did not protect data properly."[39]

    c.    89% of consumers stated that "I care about data privacy."[40]

    d.    83% of consumers declared that "I am willing to spend time and money to protect data" and that "I expect to pay more" for privacy.[41]

    e.    51% of consumers revealed that "I have switched companies or providers over their data policies or data-sharing practices."[42]

    f.    75% of consumers stated that "I will not purchase from organizations I don't trust with my data."[43]

***Plaintiffs and the Proposed Class Face Significant Risk of Continued Identity Theft***

53.    Because of Defendant's failure to prevent the Data Breach, Plaintiffs and Class Members suffered—and will continue to suffer—damages. These damages include, *inter alia*, monetary losses, lost time, anxiety, and emotional distress. Also, they suffered or are at an increased risk of suffering:

    a.    loss of the opportunity to control how their PII/PHI is used;

    b.    diminution in value of their PII/PHI;

---

[38] *Id.* at 3.
[39] *Id.*
[40] *Id.* at 9.
[41] *Id.*
[42] *Id.*
[43] *Id.* at 11.

*Hoy v. Anchorage Neighborhood Health Center, Inc.*
FIRST AMENDED COMPLAINT
Case No. 3AN-25-09106CI                                      Page 14

c. compromise and continuing publication of their PII/PHI;

d. out-of-pocket costs from trying to prevent, detect, and recovery from identity theft and fraud;

e. lost opportunity costs and wages from spending time trying to mitigate the fallout of the Data Breach by, *inter alia*, preventing, detecting, contesting, and recovering from identify theft and fraud;

f. delay in receipt of tax refund monies;

g. unauthorized use of their stolen PII/PHI; and

h. continued risk to their PII/PHI—which remains in Defendant's possession—and is thus as risk for futures breaches so long as Defendant fails to take appropriate measures to protect the PII/PHI.

54. Stolen PII/PHI is one of the most valuable commodities on the criminal information black market. According to Experian, a credit-monitoring service, stolen PII/PHI can be worth up to $1,000.00 depending on the type of information obtained.

55. The value of Plaintiffs' and Class's PII/PHI on the black market is considerable. Stolen PII/PHI trades on the black market for years. And criminals frequently post and sell stolen information openly and directly on the "Dark Web"—further exposing the information.

56. It can take victims years to discover such identity theft and fraud. This gives criminals plenty of time to sell the PII/PHI far and wide.

57. One way that criminals profit from stolen PII/PHI is by creating comprehensive dossiers on individuals called "Fullz" packages. These dossiers are both shockingly accurate and comprehensive. Criminals create them by cross-referencing and combining two sources of data—

*Hoy v. Anchorage Neighborhood Health Center, Inc.*
FIRST AMENDED COMPLAINT
Case No. 3AN-25-09106CI

Page 15

Received in the Alaska Trial Courts on 10/10/2025.

first the stolen PII/PHI, and second, unregulated data found elsewhere on the internet (like phone numbers, emails, addresses, etc.).

58. The development of "Fullz" packages means that the PII/PHI exposed in the Data Breach can easily be linked to data of Plaintiff and the Class that is available on the internet.

59. In other words, even if certain information such as emails, phone numbers, or credit card numbers may not be included in the PII/PHI stolen by the cyber-criminals in the Data Breach, criminals can easily create a Fullz package and sell it at a higher price to unscrupulous operators and criminals (such as illegal and scam telemarketers) over and over. That is exactly what is happening to Plaintiffs and Class Members, and it is reasonable for any trier of fact, including this Court or a jury, to find that Plaintiffs and other Class Members' stolen PII/PHI is being misused, and that such misuse is fairly traceable to the Data Breach.

60. Defendant disclosed the PII/PHI of Plaintiffs and Class Members for criminals to use in the conduct of criminal activity. Specifically, Defendant opened up, disclosed, and exposed the PII/PHI of Plaintiffs and Class Members to people engaged in disruptive and unlawful business practices and tactics, including online account hacking, unauthorized use of financial accounts, and fraudulent attempts to open unauthorized financial accounts (i.e., identity fraud), all using the stolen PII/PHI.

61. Defendant's failure to promptly and properly notify Plaintiffs and Class Members of the Data Breach exacerbated Plaintiffs' and Class Members' injury by depriving them of the earliest ability to take appropriate measures to protect their PII/PHI and take other necessary steps to mitigate the harm caused by the Data Breach.

***Defendant Knew—Or Should Have Known—of the Risk of a Data Breach***

*Hoy v. Anchorage Neighborhood Health Center, Inc.*
FIRST AMENDED COMPLAINT
Case No. 3AN-25-09106CI                                                                 Page 16

Received in the Alaska Trial Courts on 10/10/2025.

62.     Defendant's data security obligations were particularly important given the substantial increase in cyberattacks and/or data breaches in recent years.

63.     In 2024, a record 3,158 data breaches occurred—exposing approximately 1,350,835,988 sensitive records (i.e., 211% increase year over year).[44]

64.     Indeed, cyberattacks have become so notorious that the Federal Bureau of Investigation ("FBI") and U.S. Secret Service issue warnings to potential targets, so they are aware of, and prepared for, a potential attack. As one report explained, "[e]ntities like smaller municipalities and hospitals are attractive to ransomware criminals . . . because they often have lesser IT defenses and a high incentive to regain access to their data quickly."[45]

65.     In fact, according to the cybersecurity firm Mimecast, 90% of healthcare organizations have experienced cyberattacks.[46]

66.     Therefore, the increase in such attacks, and attendant risk of future attacks, was widely known to the public and to anyone in Defendant's industry, including Defendant.

***Defendant Failed to Follow FTC Guidelines***

67.     According to the Federal Trade Commission ("FTC"), the need for data security should be factored into all business decision-making. Thus, the FTC issued numerous guidelines identifying best data security practices that businesses—like Defendant—should use to protect against unlawful data exposure.

---

[44] *2024 Data Breach Report*, IDENTITY THEFT RESOURCE CENTER (Jan. 2025), https://www.idtheftcenter.org/wp-content/uploads/2025/02/ITRC_2024DataBreachReport.pdf.
[45] Ben Kochman, *FBI, Secret Service Warn of Targeted Ransomware*, LAW360 (Nov. 18, 2019), https://www.law360.com/articles/1220974/fbi-secret-service-warn-of-targeted-ransomware.
[46] *See* Maria Henriquez, *Iowa City Hospital Suffers Phishing Attack*, SECURITY MAGAZINE (Nov. 23, 2020), https://www.securitymagazine.com/articles/93988-iowa-city-hospital-suffers-phishing-attack (last visited Sept. 11, 2023).

*Hoy v. Anchorage Neighborhood Health Center, Inc.*
FIRST AMENDED COMPLAINT
Case No. 3AN-25-09106CI                                                                Page 17

Received in the Alaska Trial Courts on 10/10/2025.

68.     In 2016, the FTC updated its publication, *Protecting Personal Information: A Guide for Business*. There, the FTC set guidelines for what data security principles and practices businesses must use.[47]  The FTC declared that, *inter alia*, businesses must:

  a.     protect the personal customer information that they keep;

  b.     properly dispose of personal information that is no longer needed;

  c.     encrypt information stored on computer networks;

  d.     understand their network's vulnerabilities; and

  e.     implement policies to correct security problems.

69.     The guidelines also recommend that businesses watch for the transmission of large amounts of data out of the system—and then have a response plan ready for such a breach.

70.     Furthermore, the FTC explains that companies must:

  a.     not maintain information longer than is needed to authorize a transaction;

  b.     limit access to sensitive data;

  c.     require complex passwords to be used on networks;

  d.     use industry-tested methods for security;

  e.     monitor for suspicious activity on the network; and

  f.     verify that third-party service providers use reasonable security measures.

71.     The FTC brings enforcement actions against businesses for failing to protect customer data adequately and reasonably. Thus, the FTC treats the failure—to use reasonable and appropriate measures to protect against unauthorized access to confidential consumer data—as an

---

[47] *Protecting Personal Information: A Guide for Business,* FED TRADE COMMISSION (Oct. 2016) https://www.ftc.gov/system/files/documents/plain-language/pdf-0136_proteting-personal-information.pdf.

*Hoy v. Anchorage Neighborhood Health Center, Inc.*
FIRST AMENDED COMPLAINT
Case No. 3AN-25-09106CI                                                                 Page 18

unfair act or practice prohibited by Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

72.     In short, Defendant's failure to use reasonable and appropriate measures to protect against unauthorized access to its current and former patients' data constitutes an unfair act or practice prohibited by Section 5 of the FTCA, 15 U.S.C. § 45.

***Defendant Failed to Follow Industry Standards***

73.     Several best practices have been identified that—at a *minimum*—should be implemented by businesses like Defendant. These industry standards include: educating all employees; strong passwords; multi-layer security, including firewalls, anti-virus, and anti-malware software; encryption (making data unreadable without a key); multi-factor authentication; backup data; and limiting which employees can access sensitive data.

74.     Other industry standard best practices include: installing appropriate malware detection software; monitoring and limiting the network ports; protecting web browsers and email management systems; setting up network systems such as firewalls, switches, and routers; monitoring and protection of physical security systems; protection against any possible communication system; and training staff regarding critical points.

75.     Upon information and belief, Defendant failed to implement industry-standard cybersecurity measures, including failing to meet the minimum standards of both the NIST Cybersecurity Framework Version 2.0 (including without limitation PR.AA-01, PR.AA.-02, PR.AA-03, PR.AA-04, PR.AA-05, PR.AT-01, PR.DS-01, PR.DS-02, PR.DS-10, PR.PS-01, PR.PS-02, PR.PS-05, PR.IR-01, DE.CM-01, DE.CM-03, DE.CM-06, DE.CM-09, and RS.CO-04)

*Hoy v. Anchorage Neighborhood Health Center, Inc.*
FIRST AMENDED COMPLAINT
Case No. 3AN-25-09106CI                                                      Page 19

Received in the Alaska Trial Courts on 10/10/2025.

and the Center for Internet Security's Critical Security Controls (CIS CSC), which are all established standards in reasonable cybersecurity readiness.

76.     These frameworks are applicable and accepted industry standards. And by failing to comply with these accepted standards, Defendant opened the door to the criminals—thereby causing the Data Breach.

***Defendant Violated HIPAA***

77.     HIPAA circumscribes security provisions and data privacy responsibilities designed to keep patients' medical information safe. HIPAA compliance provisions, commonly known as the Administrative Simplification Rules, establish national standards for electronic transactions and code sets to maintain the privacy and security of protected health information.[48]

78.     HIPAA provides specific privacy rules that require comprehensive administrative, physical, and technical safeguards to ensure the confidentiality, integrity, and security of PII/PHI and PHI is properly maintained.[49]

79.     The Data Breach itself resulted from a combination of inadequacies showing Defendant failed to comply with safeguards mandated by HIPAA. Defendant's security failures include, but are not limited to:

---

[48] HIPAA lists 18 types of information that qualify as PHI according to guidance from the Department of Health and Human Services Office for Civil Rights, and includes, *inter alia*: names, addresses, any dates including dates of birth, Social Security numbers, and medical record numbers.

[49] *See* 45 C.F.R. § 164.306 (security standards and general rules); 45 C.F.R. § 164.308 (administrative safeguards); 45 C.F.R. § 164.310 (physical safeguards); 45 C.F.R. § 164.312 (technical safeguards).

*Hoy v. Anchorage Neighborhood Health Center, Inc.*
FIRST AMENDED COMPLAINT
Case No. 3AN-25-09106CI                                                            Page 20

a.  failing to ensure the confidentiality and integrity of electronic PHI that it creates, receives, maintains and transmits in violation of 45 C.F.R. § 164.306(a)(1);

b.  failing to protect against any reasonably-anticipated threats or hazards to the security or integrity of electronic PHI in violation of 45 C.F.R. § 164.306(a)(2);

c.  failing to protect against any reasonably anticipated uses or disclosures of electronic PHI that are not permitted under the privacy rules regarding individually identifiable health information in violation of 45 C.F.R. § 164.306(a)(3);

d.  failing to ensure compliance with HIPAA security standards by Defendant's workforce in violation of 45 C.F.R. § 164.306(a)(4);

e.  failing to implement technical policies and procedures for electronic information systems that maintain electronic PHI to allow access only to those persons or software programs that have been granted access rights in violation of 45 C.F.R. § 164.312(a)(1);

f.  failing to implement policies and procedures to prevent, detect, contain and correct security violations in violation of 45 C.F.R. § 164.308(a)(1);

g.  failing to identify and respond to suspected or known security incidents and failing to mitigate, to the extent practicable, harmful effects of security incidents that are known to the covered entity in violation of 45 C.F.R. § 164.308(a)(6)(ii);

*Hoy v. Anchorage Neighborhood Health Center, Inc.*
FIRST AMENDED COMPLAINT
Case No. 3AN-25-09106CI                                                                    Page 21

Received in the Alaska Trial Courts on 10/10/2025.

h.      failing to effectively train all staff members on the policies and procedures with respect to PHI as necessary and appropriate for staff members to carry out their functions and to maintain security of PHI in violation of 45 C.F.R. § 164.530(b) and 45 C.F.R. § 164.308(a)(5); and

i.      failing to design, implement, and enforce policies and procedures establishing physical and administrative safeguards to reasonably safeguard PHI, in compliance with 45 C.F.R. § 164.530(c).

80.     Simply put, the Data Breach resulted from a combination of insufficiencies that demonstrate Defendant failed to comply with safeguards mandated by HIPAA regulations.

## CLASS ACTION ALLEGATIONS

81.     Plaintiffs bring this class action under the Alaska Rules of Civil Procedure 23(a), 23(b)(2), and 23(b)(3), individually and on behalf of all members of the following class:

> All individuals residing in the United States whose PII/PHI was compromised in the Data Breach discovered by Anchorage Neighborhood Health Center in August 2025, including all those individuals who received notice of the breach.

82.     Excluded from the Class are Defendant, its agents, affiliates, parents, subsidiaries, any entity in which Defendant has a controlling interest, any Defendant officer or director, any successor or assign, and any Judge who adjudicates this case, including their staff and immediate family.

83.     Plaintiffs reserve the right to amend the class definition.

84.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of his claims on class-wide bases using the same evidence as would be used to prove those elements in individual actions asserting the same claims.

*Hoy v. Anchorage Neighborhood Health Center, Inc.*
FIRST AMENDED COMPLAINT
Case No. 3AN-25-09106CI                                        Page 22

Received in the Alaska Trial Courts on 10/10/2025.

85.     _Ascertainability_. All members of the proposed Class are readily ascertainable from information in Defendant's custody and control. After all, Defendant already identified some individuals and sent them data breach notices.

86.     _Numerosity_. The Class Members are so numerous that joinder of all Class Members is impracticable. Upon information and belief, the proposed Class includes at least 10,000 members.

87.     _Typicality_. Plaintiffs' claims are typical of Class Members' claims as each arises from the same Data Breach, the same alleged violations by Defendant, and the same unreasonable manner of notifying individuals about the Data Breach.

88.     _Adequacy_. Plaintiffs will fairly and adequately protect the proposed Class's common interests. His interests do not conflict with Class Members' interests. And Plaintiffs have retained counsel—including lead counsel—that is experienced in complex class action litigation and data privacy to prosecute this action on the Class's behalf.

89.     _Commonality and Predominance_. Plaintiffs' and the Class's claims raise predominantly common fact and legal questions—which predominate over any questions affecting individual Class Members—for which a class wide proceeding can answer for all Class Members. In fact, a class wide proceeding is necessary to answer the following questions:

> a.     if Defendant had a duty to use reasonable care in safeguarding Plaintiffs' and the Class's PII/PHI;
>
> b.     if Defendant failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

_Hoy v. Anchorage Neighborhood Health Center, Inc._
FIRST AMENDED COMPLAINT
Case No. 3AN-25-09106CI                                                                    Page 23

Received in the Alaska Trial Courts on 10/10/2025.

     c.     if Defendant were negligent in maintaining, protecting, and securing PII/PHI;

     d.     if Defendant breached contract promises to safeguard Plaintiffs' and the Class's PII/PHI;

     e.     if Defendant took reasonable measures to determine the extent of the Data Breach after discovering it;

     f.     if Defendant's Breach Notice was reasonable;

     g.     if the Data Breach caused Plaintiffs and the Class injuries;

     h.     what the proper damages measure is; and

     i.     if Plaintiffs and the Class are entitled to damages, treble damages, and or injunctive relief.

90.     <u>Superiority.</u> A class action will provide substantial benefits and is superior to all other available means for the fair and efficient adjudication of this controversy. The damages or other financial detriment suffered by individual Class Members are relatively small compared to the burden and expense that individual litigation against Defendant would require. Thus, it would be practically impossible for Class Members, on an individual basis, to obtain effective redress for their injuries. Not only would individualized litigation increase the delay and expense to all parties and the courts, but individualized litigation would also create the danger of inconsistent or contradictory judgments arising from the same set of facts. By contrast, the class action device provides the benefits of adjudication of these issues in a single proceeding, ensures economies of scale, provides comprehensive supervision by a single court, and presents no unusual management difficulties.

**FIRST CAUSE OF ACTION**

*Hoy v. Anchorage Neighborhood Health Center, Inc.*
FIRST AMENDED COMPLAINT
Case No. 3AN-25-09106CI                             Page 24

### Negligence
### (On Behalf of Plaintiffs and the Class)

91.     Plaintiffs incorporate by reference all other paragraphs as if fully set forth herein.

92.     Plaintiffs and the Class entrusted their PII/PHI to Defendant on the premise and with the understanding that Defendant would safeguard their PII/PHI, use their PII/PHI for business purposes only, and/or not disclose their PII/PHI to unauthorized third parties.

93.     Defendant owed a duty of care to Plaintiffs and Class Members because it was foreseeable that Defendant's failure—to use adequate data security in accordance with industry standards for data security—would compromise their PII/PHI in a data breach. And here, that foreseeable danger came to pass.

94.     Defendant has full knowledge of the sensitivity of the PII/PHI and the types of harm that Plaintiffs and the Class could and would suffer if their PII/PHI was wrongfully disclosed.

95.     Defendant owed these duties to Plaintiffs and Class Members because they are members of a well-defined, foreseeable, and probable class of individuals whom Defendant knew or should have known would suffer injury-in-fact from Defendant's inadequate security practices. After all, Defendant actively sought and obtained Plaintiffs' and Class Members' PII/PHI.

96.     Defendant owed—to Plaintiffs and Class Members—at least the following duties to:

        a.     exercise reasonable care in handling and using the PII/PHI in its care and custody;

        b.     implement industry-standard security procedures sufficient to reasonably protect the information from a data breach, theft, and unauthorized;

        c.     promptly detect attempts at unauthorized access;

*Hoy v. Anchorage Neighborhood Health Center, Inc.*
FIRST AMENDED COMPLAINT
Case No. 3AN-25-09106CI                                                              Page 25

Received in the Alaska Trial Courts on 10/10/2025.

      d.      notify Plaintiffs and Class Members within a reasonable timeframe of any breach to the security of their PII/PHI.

97.      Thus, Defendant owed a duty to timely and accurately disclose to Plaintiffs and Class Members the scope, nature, and occurrence of the Data Breach. After all, this duty is required and necessary for Plaintiffs and Class Members to take appropriate measures to protect their PII/PHI, to be vigilant in the face of an increased risk of harm, and to take other necessary steps to mitigate the harm caused by the Data Breach.

98.      Defendant also had a duty to exercise appropriate clearinghouse practices to remove PII/PHI it was no longer required to retain under applicable regulations.

99.      Defendant knew or reasonably should have known that the failure to exercise due care in the collecting, storing, and using of the PII/PHI of Plaintiffs and the Class involved an unreasonable risk of harm to Plaintiffs and the Class, even if the harm occurred through the criminal acts of a third party.

100.      Defendant's duty to use reasonable security measures arose because of the special relationship that existed between Defendant and Plaintiffs and the Class. That special relationship arose because Plaintiffs and the Class entrusted Defendant with their confidential PII/PHI, a necessary part of obtaining services from Defendant.

101.      The risk that unauthorized persons would attempt to gain access to the PII/PHI and misuse it was foreseeable. Given that Defendant hold vast amounts of PII/PHI, it was inevitable that unauthorized individuals would attempt to access Defendant's databases containing the PII/PHI —whether by malware or otherwise.

Received in the Alaska Trial Courts on 10/10/2025.

102.    PII/PHI is highly valuable, and Defendant knew, or should have known, the risk in obtaining, using, handling, emailing, and storing the PII/PHI of Plaintiffs' and Class Members' and the importance of exercising reasonable care in handling it.

103.    Defendant improperly and inadequately safeguarded the PII/PHI of Plaintiffs and the Class in deviation of standard industry rules, regulations, and practices at the time of the Data Breach.

104.    Defendant breached these duties as evidenced by the Data Breach.

105.    Defendant acted with wanton and reckless disregard for the security and confidentiality of Plaintiffs' and Class Members' PII/PHI by:

a.      disclosing and providing access to this information to third parties and

b.      failing to properly supervise both the way the PII/PHI was stored, used, and exchanged, and those in its employ who were responsible for making that happen.

106.    Defendant breached its duties by failing to exercise reasonable care in supervising its agents, contractors, vendors, and suppliers, and in handling and securing the personal information and PII/PHI of Plaintiffs and Class Members which actually and proximately caused the Data Breach and Plaintiffs' and Class Members' injury.

107.    Defendant further breached its duties by failing to provide reasonably timely notice of the Data Breach to Plaintiffs and Class Members, which actually and proximately caused and exacerbated the harm from the Data Breach and Plaintiffs' and Class Members' injuries-in-fact.

108.    Defendant has admitted that the PII/PHI of Plaintiffs and the Class was wrongfully lost and disclosed to unauthorized third persons because of the Data Breach.

*Hoy v. Anchorage Neighborhood Health Center, Inc.*
FIRST AMENDED COMPLAINT
Case No. 3AN-25-09106CI                                                              Page 27

109.     As a direct and traceable result of Defendant's negligence and/or negligent supervision, Plaintiffs and Class Members have suffered or will suffer damages, including monetary damages, increased risk of future harm, embarrassment, humiliation, frustration, and emotional distress.

110.     And, on information and belief, Plaintiffs' PII/PHI has already been published—or will be published imminently—by cybercriminals on the Dark Web.

111.     Defendant's breach of its common-law duties to exercise reasonable care and its failures and negligence actually and proximately caused Plaintiffs and Class Members actual, tangible, injury-in-fact and damages, including, without limitation, the theft of their PII/PHI by criminals, improper disclosure of their PII/PHI, lost benefit of their bargain, lost value of their PII/PHI, and lost time and money incurred to mitigate and remediate the effects of the Data Breach that resulted from and were caused by Defendant's negligence, which injury-in-fact and damages are ongoing, imminent, immediate, and which they continue to face.

### SECOND CAUSE OF ACTION
**Negligence *per se***
**(On Behalf of Plaintiffs and the Class)**

112.     Plaintiffs incorporate by reference all other paragraphs as if fully set forth herein.

113.     Under the FTC Act, 15 U.S.C. § 45, Defendant had a duty to use fair and adequate computer systems and data security practices to safeguard Plaintiffs' and Class Members' PII/PHI.

114.     Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce," including, as interpreted and enforced by the FTC, the unfair act or practice by businesses, such as Defendant, of failing to use reasonable measures to protect the PII/PHI entrusted to it. The FTC

*Hoy v. Anchorage Neighborhood Health Center, Inc.*
FIRST AMENDED COMPLAINT
Case No. 3AN-25-09106CI                                                                          Page 28

publications and orders promulgated pursuant to the FTC Act also form part of the basis of Defendant's duty to protect Plaintiffs' and the Class Members' sensitive PII/PHI.

115. Defendant breached its respective duties to Plaintiffs and Class Members under the FTC Act by failing to provide fair, reasonable, or adequate computer systems and data security practices to safeguard PII/PHI.

116. Defendant violated its duty under Section 5 of the FTC Act by failing to use reasonable measures to protect PII/PHI and not complying with applicable industry standards as described in detail herein. Defendant's conduct was particularly unreasonable given the nature and amount of PII/PHI Defendant had collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

117. The harm that has occurred is the type of harm the FTC Act is intended to guard against. Indeed, the FTC has pursued numerous enforcement actions against businesses that, because of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm as that suffered by Plaintiffs and members of the Class.

118. But for Defendant's wrongful and negligent breach of its duties owed, Plaintiffs and Class Members would not have been injured.

119. The injury and harm suffered by Plaintiffs and Class Members was the reasonably foreseeable result of Defendant's breach of their duties. Defendant knew or should have known that Defendant was failing to meet its duties and that its breach would cause Plaintiffs and members of the Class to suffer the foreseeable harms associated with the exposure of their PII/PHI.

120. Similarly, under HIPAA, Defendant had a duty to follow HIPAA standards for privacy and security practices—as to protect Plaintiffs' and Class Members' PHI.

Received in the Alaska Trial Courts on 10/10/2025.

121.    Defendant violated its duty under HIPAA by failing to use reasonable measures to protect its PHI and by not complying with applicable regulations detailed *supra*. Here too, Defendant's conduct was particularly unreasonable given the nature and amount of PHI that Defendant collected and stored and the foreseeable consequences of a data breach, including, specifically, the immense damages that would result to individuals in the event of a breach, which ultimately came to pass.

122.    Defendant's various violations and its failure to comply with applicable laws and regulations constitutes negligence *per se*.

123.    As a direct and proximate result of Defendant's negligence *per se*, Plaintiffs and Class Members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

### THIRD CAUSE OF ACTION
**Breach of Implied Contract**
**(On Behalf of Plaintiffs and the Class)**

124.    Plaintiffs incorporate by reference all other paragraphs as if fully set forth herein.

125.    Plaintiffs and Class Members either directly contracted with Defendant or Plaintiffs and Class Members were the third-party beneficiaries of contracts with Defendant.

126.    Plaintiffs and Class Members were required to provide their PII/PHI to Defendant as a condition of receiving medical services provided by Defendant. Plaintiffs and Class Members provided their PII/PHI to Defendant or its third-party agents in exchange for Defendant's medical services.

127.    Plaintiffs and Class Members reasonably understood that a portion of the funds they paid would be used to pay for adequate cybersecurity measures.

*Hoy v. Anchorage Neighborhood Health Center, Inc.*
FIRST AMENDED COMPLAINT
Case No. 3AN-25-09106CI                                                                 Page 30

Received in the Alaska Trial Courts on 10/10/2025.

128.    Plaintiffs and Class Members reasonably understood that Defendant would use adequate cybersecurity measures to protect the PII/PHI that they were required to provide based on Defendant's duties under state and federal law and its internal policies.

129.    Plaintiffs and the Class Members accepted Defendant's offers by disclosing their PII/PHI to Defendant or its third-party agents in exchange for medical services.

130.    In turn, and through internal policies, Defendant agreed to protect and not disclose the PII/PHI to unauthorized persons.

131.    In its various policies described *supra*, Defendant represented that they had a legal duty to protect Plaintiffs' and Class Member's PII/PHI.

132.    Implicit in the parties' agreement was that Defendant would provide Plaintiffs and Class Members with prompt and adequate notice of all unauthorized access and/or theft of their PII/PHI.

133.    After all, Plaintiffs and Class Members would not have entrusted their PII/PHI to Defendant in the absence of such an agreement with Defendant.

134.    Plaintiffs and the Class fully performed their obligations under the implied contracts with Defendant.

135.    The covenant of good faith and fair dealing is an element of every contract. Thus, parties must act with honesty in fact in the conduct or transactions concerned. Good faith and fair dealing, in connection with executing contracts and discharging performance and other duties according to their terms, means preserving the spirit—and not merely the letter—of the bargain. In short, the parties to a contract are mutually obligated to comply with the substance of their contract in addition to its form.

*Hoy v. Anchorage Neighborhood Health Center, Inc.*
FIRST AMENDED COMPLAINT
Case No. 3AN-25-09106CI                                                        Page 31

Received in the Alaska Trial Courts on 10/10/2025.

136. Subterfuge and evasion violate the duty of good faith in performance even when an actor believes their conduct to be justified. Bad faith may be overt or consist of inaction. And fair dealing may require more than honesty.

137. Defendant materially breached the contracts it entered with Plaintiffs and Class Members by:

  a. failing to safeguard their information;

  b. failing to notify them promptly of the intrusion into its computer systems that compromised such information.

  c. failing to comply with industry standards;

  d. failing to comply with the legal obligations necessarily incorporated into the agreements; and

  e. failing to ensure the confidentiality and integrity of the electronic PII/PHI that Defendant created, received, maintained, and transmitted.

138. In these and other ways, Defendant violated its duty of good faith and fair dealing.

139. Defendant's material breaches were the direct and proximate cause of Plaintiffs' and Class Members' injuries (as detailed *supra*).

140. And, on information and belief, Plaintiffs' PII/PHI has already been published—or will be published imminently—by cybercriminals on the Dark Web.

141. Plaintiffs and Class Members performed as required under the relevant agreements, or such performance was waived by Defendant's conduct.

### FOURTH CAUSE OF ACTION
**Invasion of Privacy**
**(On Behalf of Plaintiffs and the Class)**

142. Plaintiffs incorporate by reference all other paragraphs as if fully set forth herein.

143.    Plaintiffs and the Class had a legitimate expectation of privacy regarding their highly sensitive and confidential PII/PHI and were accordingly entitled to the protection of this information against disclosure to unauthorized third parties.

144.    Defendant owed a duty to its current and former patients, including Plaintiffs and the Class, to keep this information confidential.

145.    The unauthorized acquisition (i.e., theft) by a third party of Plaintiffs and Class Members' PII/PHI is highly offensive to a reasonable person.

146.    The intrusion was into a place or thing which was private and entitled to be private. Plaintiffs and the Class disclosed their sensitive and confidential information to Defendant, but did so privately, with the intention that their information would be kept confidential and protected from unauthorized disclosure. Plaintiffs and the Class were reasonable in their belief that such information would be kept private and would not be disclosed without their authorization.

147.    The Data Breach constitutes an intentional interference with Plaintiffs' and the Class's interest in solitude or seclusion, either as to their person or as to their private affairs or concerns, of a kind that would be highly offensive to a reasonable person.

148.    Defendant acted with a knowing state of mind when it permitted the Data Breach because it knew its information security practices were inadequate.

149.    Defendant acted with a knowing state of mind when it failed to notify Plaintiffs and the Class in a timely fashion about the Data Breach, thereby materially impairing their mitigation efforts.

150.    Acting with knowledge, Defendant had notice and knew that its inadequate cybersecurity practices would cause injury to Plaintiffs and the Class.

*Hoy v. Anchorage Neighborhood Health Center, Inc.*
FIRST AMENDED COMPLAINT
Case No. 3AN-25-09106CI                                                                           Page 33

Received in the Alaska Trial Courts on 10/10/2025.

151.     As a proximate result of Defendant's acts and omissions, the private and sensitive PII/PHI of Plaintiff and the Class were stolen by a third party and is now available for disclosure and redisclosure without authorization, causing Plaintiffs and the Class to suffer damages (as detailed *supra*).

152.     And, on information and belief, Plaintiffs' PII/PHI has already been published—or will be published imminently—by cybercriminals on the Dark Web.

153.     Unless and until enjoined and restrained by order of this Court, Defendant's wrongful conduct will continue to cause great and irreparable injury to Plaintiffs and the Class since their PII/PHI are still maintained by Defendant with their inadequate cybersecurity system and policies.

154.     Plaintiffs and the Class have no adequate remedy at law for the injuries relating to Defendant's continued possession of their sensitive and confidential records. A judgment for monetary damages will not end Defendant's inability to safeguard the PII/PHI of Plaintiffs and the Class.

155.     In addition to injunctive relief, Plaintiffs, on behalf of themselves and the other Class Members, also seek compensatory damages for Defendant's invasion of privacy, which includes the value of the privacy interest invaded by Defendant, the costs of future monitoring of their credit history for identity theft and fraud, plus prejudgment interest and costs.

### FIFTH CAUSE OF ACTION
**Unjust Enrichment**
**(On Behalf of Plaintiffs and the Class)**

156.     Plaintiffs incorporate by reference all other paragraphs as if fully set forth herein.

157.     This claim is pleaded in the alternative to the breach of implied contract claim.

*Hoy v. Anchorage Neighborhood Health Center, Inc.*
FIRST AMENDED COMPLAINT
Case No. 3AN-25-09106CI                                                                                   Page 34

Received in the Alaska Trial Courts on 10/10/2025.

158. Plaintiffs and Class Members conferred a benefit upon Defendant. After all, Defendant benefitted from (1) using their PII/PHI to provide services, and (2) accepting payment.

159. Defendant appreciated or had knowledge of the benefits it received from Plaintiffs and Class Members.

160. Plaintiffs and Class Members reasonably understood that Defendant would use adequate cybersecurity measures to protect the PII/PHI that they were required to provide based on Defendant's duties under state and federal law and its internal policies.

161. Defendant enriched itself by saving the costs they reasonably should have expended on data security measures to secure Plaintiffs' and Class Members' PII/PHI.

162. Instead of providing a reasonable level of security, or retention policies, that would have prevented the Data Breach, Defendant instead calculated to avoid its data security obligations at the expense of Plaintiffs and Class Members by utilizing cheaper, ineffective security measures. Plaintiffs and Class Members, on the other hand, suffered as a direct and proximate result of Defendant's failure to provide the requisite security.

163. Under principles of equity and good conscience, Defendant should not be permitted to retain the full value of Plaintiffs' and Class Members' (1) PII/PHI and (2) payment because Defendant failed to adequately protect their PII/PHI.

164. Plaintiffs and Class Members have no adequate remedy at law.

165. Defendant should be compelled to disgorge into a common fund—for the benefit of Plaintiffs and Class Members—all unlawful or inequitable proceeds that it received because of its misconduct.

### SIXTH CAUSE OF ACTION
**Breach of Fiduciary Duty**
**(On Behalf of Plaintiffs and the Class)**

*Hoy v. Anchorage Neighborhood Health Center, Inc.*
FIRST AMENDED COMPLAINT
Case No. 3AN-25-09106CI

Page 35

166. Plaintiffs incorporate by reference all other paragraphs as if fully set forth herein.

167. Given the relationship between Defendant and Plaintiffs and Class Members, where Defendant became guardian of Plaintiffs' and Class Members' PII/PHI, Defendant became a fiduciary by its undertaking and guardianship of the PII/PHI, to act primarily for Plaintiffs and Class Members, (1) for the safeguarding of Plaintiffs and Class Members' PII/PHI; (2) to timely notify Plaintiffs and Class Members of a Data Breach and disclosure; and (3) to maintain complete and accurate records of what information (and where) Defendant did and does store.

168. Defendant has a fiduciary duty to act for the benefit of Plaintiffs and Class Members upon matters within the scope of Defendant's relationship with them—especially to secure their PII/PHI.

169. Because of the highly sensitive nature of the PII/PHI, Plaintiffs and Class Members would not have entrusted Defendant, or anyone in Defendant's position, to retain their PII/PHI had they known the reality of Defendant's inadequate data security practices.

170. Defendant breached its fiduciary duties to Plaintiffs and Class Members by failing to sufficiently encrypt or otherwise protect Plaintiffs' and Class Members' PII/PHI.

171. Defendant also breached its fiduciary duties to Plaintiffs and Class Members by failing to diligently discover, investigate, and give notice of the Data Breach in a reasonable and practicable period.

172. As a direct and proximate result of Defendant's breach of its fiduciary duties, Plaintiffs and Class Members have suffered and will continue to suffer numerous injuries (as detailed *supra*).

**PRAYER FOR RELIEF**

*Hoy v. Anchorage Neighborhood Health Center, Inc.*
FIRST AMENDED COMPLAINT
Case No. 3AN-25-09106CI

Page 36

Received in the Alaska Trial Courts on 10/10/2025.

Plaintiffs and Class Members respectfully request judgment against Defendant and that the Court enter an order:

A.   Certifying this case as a class action on behalf of Plaintiffs and the proposed Class, appointing Plaintiffs as class representative, and appointing their counsel to represent the Class;

B.   Awarding declaratory and other equitable relief as necessary to protect the interests of Plaintiffs and the Class;

C.   Awarding injunctive relief as necessary to protect the interests of Plaintiffs and the Class;

D.   Awarding Plaintiffs and the Class damages including applicable compensatory, exemplary, punitive damages, and statutory damages, as allowed by law;

E.   Awarding restitution and damages to Plaintiffs and the Class in an amount to be determined at trial;

F.   Awarding attorneys' fees and costs, as allowed by law;

G.   Awarding prejudgment and post-judgment interest, as provided by law;

H.   Granting Plaintiffs and the Class leave to amend this complaint to conform to the evidence produced at trial; and

I.   Granting other relief that this Court finds appropriate.

Date: October 10, 2025

                              Respectfully submitted,

                              By: /s/Joshua B. Cooley
                              Joshua B. Cooley, Esq. (AK#1409065)
                              Katherine Elsner (AK# 1411116)
                              **EHRHARDT, ELSNER, & COOLEY**
                              215 Fidalgo Avenue Suite 201

*Hoy v. Anchorage Neighborhood Health Center, Inc.*
FIRST AMENDED COMPLAINT
Case No. 3AN-25-09106CI                                          Page 37

Received in the Alaska Trial Courts on 10/10/2025.

Kenai, AK 99611
Telephone: (907) 283-2876
Facsimile: (907) 283-2896
Email:      josh@907legal.com
Email:      katie@907legaI.com

Samuel J. Strauss*
Raina C. Borrelli*
**STRAUSS BORRELLI PLLC**
980 N. Michigan Avenue, Suite 1610
Chicago, Illinois 60611
T: (872) 263-1100
F: (872) 263-1109
sam@straussborrelli.com
raina@straussborrelli.com

Scott Edward Cole, Esq.
**COLE & VAN NOTE**
555 12th Street, Suite 2100
Oakland, California 94607
Telephone:  (510) 891-9800
Facsimile:  (510) 891-7030
Email:      sec@colevannote.com

John J. Nelson*
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
280 S. Beverly Drive, Penthouse
Beverly Hills, CA 90212
Telephone: (858) 209-6941
Email: jnelson@milberg.com

*Pro hac vice forthcoming*
*Attorneys for Plaintiffs and Proposed Class*

*Hoy v. Anchorage Neighborhood Health Center, Inc.*
FIRST AMENDED COMPLAINT
Case No. 3AN-25-09106CI                              Page 38

Received in the Alaska Trial Courts on 10/10/2025.

**CERTIFICATE OF SERVICE:**

I, undersigned, certify that on October 10, 2025, I caused to be lodged a true and correct copy of the foregoing by Trufiling, and effected service by mail on the following parties:

Anchorage Neighborhood Health Center, Inc.
c/o Registered Agent: Lisa Aquino
4951 Business Park Blvd.
Anchorage, AK 99503

By: /s/ Elizabeth Hunter
      Elizabeth Hunter