# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

DARRYL HOY, LAURA JEAN WACHHOLZ, and LEW DIGGS, on behalf of themselves and all others similarly situated,

Plaintiffs,

v.

ANCHORAGE NEIGHBORHOOD HEALTH CENTER, INC.,

Defendant.

Case No. 3:25-cv-00298-SLG

**ORDER DENYING MOTION TO REMAND AND GRANTING MOTION FOR SUBSTITUTION**

This order resolves the following two pending motions:

1. At Docket 15 is Defendant Anchorage Neighborhood Health Center, Inc.'s ("ANHC") Motion for Substitution of the United States in Place of Defendant Anchorage Neighborhood Health Center, Inc. [42 U.S.C. § 233(*l*)(2)].[1] The United States filed a Statement of Interest in Opposition to ANHC's Motion to Substitute at Docket 24,[2] to which ANHC responded at Docket 28. Plaintiffs Darryl Hoy, Laura

[1] ANHC's motion includes an accompanying New Patient Registration Form, Docket 15-3 at 1-4, Consent for Treatment and Billing Practices, Docket 15-3 at 5-8, PHI Disclosure Agreement, Docket 15-3 at 9, and Notice of Privacy Practices, Docket 15-4 at 1-3.

[2] The United States' Statement of Interest is in response to both Plaintiffs' Motion to Remand at Docket 17 and Defendant's Motion for Substitution at Docket 15.

Jean Wachholz, and Lew Diggs responded in opposition to Defendant's Motion for Substitution at Docket 27.[3]

2. At Docket 17 is Plaintiffs' Notice of Motion and Motion to Remand to State Court. ANHC responded in opposition at Docket 22, to which Plaintiffs replied at Docket 23.

The United States, ANHC, and Plaintiffs each filed a Notice of Supplemental Authority. On February 18, 2026, the United States filed a Notice of Supplemental Persuasive Authority at Docket 32, to which ANHC responded at Docket 34. On April 24, 2026, ANHC filed a Notice of Supplemental Authority at Docket 38. Neither Plaintiffs nor the Government filed a response. And on May 12, 2026, Plaintiffs filed a Notice of Supplemental Authority at Docket 43, to which ANHC responded at Docket 45.

Oral argument on both motions was heard on May 12, 2026, in Anchorage, Alaska.[4]

---

[3] In their opposition to ANHC's motion to substitute, Plaintiffs incorporate by reference the arguments set forth in their Motion to Remand to State Court and accompanying Memorandum of Points and Authorities. Docket 27 at 1-2 (citing Docket 17). As for Plaintiffs, the Court will rely on the arguments set forth at Dockets 17, 23, and 43.

[4] Docket 44.

## BACKGROUND

### I. Statutory Background

Pursuant to Section 330 of the Public Health Service Act, 42 U.S.C. § 254b *et seq.*, (the "PHSA"), the Secretary of the U.S. Department of Health and Human Services ("HHS") may extend grants to federally funded health centers.[5] In 1995, Congress enacted the Federally Supported Health Centers Assistance Act ("FSHCAA") to aid federally funded health centers with the growing cost of medical malpractice insurance and "[t]o attract medical providers to federally funded health centers."[6] Section 233 of the FSHCAA authorizes HHS to "deem" federally funded health centers and their employees to be federal employees of the U.S. Public Health Service ("PHS").[7] PHS employees are entitled to the protections of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 1346(b), including absolute immunity "for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions."[8] "The immunity for

---

[5] 42 U.S.C. § 254b(e)(1)(A). The funding provided by 42 U.S.C. § 254b is also referred to as § 330 grants. *Friedenberg v. Lane County*, 68 F.4th 1113, 1118 (9th Cir. 2023).

[6] *Blumberger v. Tilley*, 115 F.4th 1113, 1117 (9th Cir. 2024), *cert. denied,* 145 S. Ct. 2818 (2025); *see* H.R. Rep. No. 102-823, pt. 2, at 6 (1992) ("Extending [Federal Tort Claims Act] (FTCA) coverage to grantees . . . will enable them to redirect funds now spent on medical malpractice insurance premiums[.]").

[7] 42 U.S.C. § 233(a), (g); *see also* Docket 1 at ¶ 3 (citing Docket 1-3 at 1 (Notice of Deeming Action)).

[8] 42 U.S.C. § 233(a); *Hui v. Castaneda*, 559 U.S. 799, 806 (2010) ("Section 233(a) grants absolute immunity to PHS officers and employees for actions arising out of the performance of medical or related functions within the scope of their employment by barring all actions against them for such conduct. By its terms, § 233(a) limits recovery for such conduct to suits against

deemed PHS employees is identical to the immunity for true PHS employees."[9] To effectuate this provision, "[w]hen deemed employees are sued for actions taken within the scope of their employment, the United States is similarly substituted as the defendant and the action proceeds as an FTCA suit."[10] "This remedy is 'exclusive of any other civil action or proceeding.'"[11]

In 2009, Congress enacted the Health Information Technology for Economic and Clinical Health ("HITECH") Act to encourage healthcare providers to digitize their medical records and make them available online to patients and medical care providers.[12] The HITECH Act directed HHS to make incentive payments to healthcare providers for their "adoption and meaningful use of certified electronic health records ("EHR") technology."[13] Beginning in 2015, under the HITECH Act, healthcare providers that were not "meaningful EHR user[s]" received reduced Medicare reimbursements.[14]

In 2016, Congress passed the 21st Century Cures ("Cures") Act, meant "[t]o

---

the United States.").

[9] *Blumberger*, 115 F.4th at 1117 (citing 42 U.S.C. § 233(g)(1)(A)).

[10] *Id.* (citing 42 U.S.C. § 233(a), (g)).

[11] *Id.* (quoting 42 U.S.C. § 233(a)).

[12] Health Information Technology for Economic and Clinical Health Act ("HITECH Act"), Pub. L. No. 111-5, §§ 13001–424, 123 Stat. 115, 226–79 (2009) (codified as amended in sections 42 U.S.C. §§ 300jj *et seq.*, 17901 *et seq.*).

[13] *Id.* § 4101, 123 Stat. at 467-68 (codified as amended at 42 U.S.C. § 1395w-4(o)).

[14] *Id.* § 4101, 123 Stat. at 472 (codified as amended at 42 U.S.C. § 1395w-4(a)(7)(A)(i)).

accelerate the discovery, development, and delivery of 21st century cures."[15] The Cures Act imposed civil liability on companies that engage in "information blocking" of electronic health information.[16]

## II. Factual Background

ANHC is a non-profit federally funded health center that provides medical, dental, and behavioral health services to underserved communities in and around Anchorage, Alaska.[17] ANHC has been a "deemed" PHS entity each year since at least 2010.[18]

In August 2025, ANHC was the target of a cybersecurity data breach. The August 2025 attack allegedly resulted in the unauthorized disclosure of Plaintiffs' EHR maintained by ANHC's employees.[19] Allegedly, "the Data Breach exposed at least the following types of [personal identifiable information ("PII") and protected health information ("PHI") (collectively, "PII/PHI")]: names, Social Security numbers

---

[15] 21st Century Cures Act, Pub. L. No. 114-255, 130 Stat. 1033 (2016) (codified as amended in relevant part at 42 U.S.C. §§ 300jj *et seq.*). The Act includes provisions related to various health-related issues, including the opioid epidemic, drug development, and vaccine access. *Id.* § 1, 130 Stat. at 1033–35.

[16] *Id.* § 4004, 130 Stat. at 1176-79 (codified as amended at 42 U.S.C. § 300jj-52). The statute defines "information blocking" as a practice that, "except as required by law or specified by the Secretary [of Health and Human Services] pursuant to rulemaking . . . is likely to interfere with, prevent, or materially discourage access, exchange, or use of electronic health information[.]" *Id.* § 4004, 130 Stat. at 1176 (codified as amended at 42 U.S.C. § 300jj-52(a)(1)(A)–(B)).

[17] Docket 1 at ¶ 2; Docket 1-1 at ¶¶ 11, 15.

[18] Docket 1-3 at 1 (Notice of Deeming Action); Docket 15-1 at 10-11.

[19] Docket 1-1 at ¶¶ 3-6, 21.

[“SSNs”], mailing addresses, phone numbers, email addresses, government identification numbers, financial account information, health insurance information, and medical information (e.g., symptoms, diagnoses, treatment, photographs).”[20]

After the attack, on August 29, 2025, the anonymous hackers established an “ANHC Leak Site” on the Dark Web.[21] Plaintiffs allege that since August 29, 2025, “[a]t least 10,000 patient records with SSNs, licenses, and insurance details have been leaked.”[22]

The three named Plaintiffs are current and long-term patients at ANHC.[23] Plaintiffs allege that “[a]s part of its business, Defendant receives and maintains the PII/PHI of thousands of its current and former patients” in ANHC’s EHR system.[24] When Plaintiffs first became patients, ANHC provided them with a “New Patient Registration Form,” which stated: “We are required by law to maintain the privacy of your [PHI].”[25] Plaintiffs allege that ANHC also provided a “Notice of Privacy Practices.”[26] The notice acknowledged that “ANHC respects your privacy

---

[20] Docket 1-1 at ¶ 29; *see also* Docket 1-1 at ¶¶ 3, 21-28.

[21] Docket 1-1 at ¶ 26.

[22] Docket 1-1 at ¶ 26 (alteration in original) (citing Hackmanac (@H4ckmanac), X (Sept. 9, 2025, at 2:10 ET), https://x.com/H4ckmanac/status/1965674197197201471 (last visited Sept. 14, 2026)).

[23] Docket 1-1 at ¶ 36.

[24] Docket 1-1 at ¶ 16.

[25] Docket 1-1 at ¶ 19; Docket 15-3 at 1-4 (ANHC New Patient Registration Form).

[26] Docket 1-1 at ¶ 20; Docket 15-4 at 1-3.

and understands that your personal health information is very sensitive" and that "[w]e will not disclose your information to others unless you give us permission to do so, or unless the law allows or requires us to do."[27]

On September 17, 2025, Plaintiff Darryl Hoy initiated this action in state court; the summons and Complaint were served on ANHC on September 30, 2025.[28]

On October 1, 2025, due to a lapse in appropriations caused by the federal government shutdown, HHS employees responsible for receiving notices of FTCA suits were placed on furlough status.[29]

On October 3, 2025, ANHC sent an email to the HHS email address used to monitor FTCA actions to notify HHS of this lawsuit.[30] ANHC's notice stated that because the "lawsuit falls under the protections of the FTCA/FSHCAA, ANHC is providing this notice to the United States and requests that the United States handle this matter consistent with the provisions of the FTCA/FSHCAA and other applicable laws."[31]

[27] Docket 15-4 at 3 (ANHC Notice of Privacy Practices).

[28] Docket 1 at ¶ 36; Docket 1-2 at 1-38.

[29] Docket 23-1 at ¶ 1.

[30] Docket 1-4 at 1, 3-4; *see also* Docket 23-1 at 2.

[31] Docket 1-4 at 4.

On October 10, 2025, Plaintiff Darryl Hoy, now joined by Plaintiffs Laura Jean Wachholz and Lew Diggs, filed their First Amended Consolidated Complaint ("FACC") in the state court as a putative class action.[32] The FACC alleges on information and belief that "cybercriminals were able to breach Defendant's systems because Defendant failed to adequately train its employees on cybersecurity and failed to maintain reasonable security safeguards or protocols to protect the Class's PII/PHI."[33] Plaintiffs further allege that ANHC violated multiple federal and state statutes.[34] As a result of ANHC's "failure to prevent the Data Breach and stop cybercriminals from accessing the PII/PHI," Plaintiffs allege emotional and economic injuries, as well as harms relating to invasion of privacy.[35]

Plaintiffs seek to represent "[a]ll individuals residing in the United States whose PII/PHI was compromised in the Data Breach," "including all those

---

[32] Docket 1-1; Docket 1 at 1-2.

[33] Docket 1-1 at ¶ 5.

[34] Docket 1-1 at ¶¶ 34-35 (citing Alaska Stat. §§ 45.48.010, 45.48.080); Docket 1-1 at ¶ 72 ("Defendant's failure to use reasonable and appropriate measures to protect against unauthorized access to its current and former patients' data constitutes an unfair act or practice prohibited by Section 5 of the [Federal Trade Commission Act], 15 U.S.C. § 45.").

[35] Docket 1-1 at ¶ 30; *see* Docket 1-1 at ¶ 45 ("Plaintiffs fear for their personal financial security and worry about what information was exposed in the Data Breach."); Docket 1-1 at ¶ 46 ("Because of Defendant's Data Breach, Plaintiffs have suffered—and will continue to suffer from—anxiety, sleep disruption, stress, fear, and frustration."); Docket 1-1 at ¶ 47 ("Plaintiffs suffered actual injury from the exposure and theft of their PII/PHI which violates [their] rights to privacy."); Docket 1-1 at ¶ 53 ("Because of Defendant's failure to prevent the Data Breach, Plaintiffs and Class Members suffered—and will continue to suffer—damages. These damages include, *inter alia,* monetary losses, lost time, anxiety, and emotional distress.").

individuals who received notice of the breach."[36] Plaintiffs allege six claims on behalf of themselves and the proposed class: (1) negligence;[37] (2) negligence *per se* based on violations of § 5 of the Federal Trade Commission Act and the Health Insurance Portability and Accountability Act ("HIPAA");[38] (3) breach of implied contract;[39] (4) invasion of privacy;[40] (5) unjust enrichment;[41] and (6) breach of fiduciary duty.[42] As relief, Plaintiffs request: (1) class action certification on behalf of Plaintiffs and the proposed class; (2) declaratory and equitable relief; (3) injunctive relief; (4) compensatory, statutory, and punitive damages; (5) restitution; and (6) attorneys' fees and costs.[43]

On October 23, 2025, ANHC removed this case to federal court.[44] ANHC's Notice of Removal provided four bases for removal: 28 U.S.C. § 1331 (federal question jurisdiction); 28 U.S.C. § 1442 (federal officer removal jurisdiction); 28

---

[36] Docket 1-1 at ¶ 81.

[37] Docket 1-1 at ¶¶ 91-111.

[38] Docket 1-1 at ¶¶ 112-123.

[39] Docket 1-1 at ¶¶ 124-141.

[40] Docket 1-1 at ¶¶ 142-155.

[41] Docket 1-1 at ¶¶ 156-165.

[42] Docket 1-1 at ¶¶ 166-172.

[43] Docket 1-1 at 36-37.

[44] Docket 1 at 1.

U.S.C. § 2679(d) (the FTCA); and 42 U.S.C. § 233 (federally qualified health center immunity).[45]

On November 13, 2025, ANHC filed its motion to substitute the United States in place of ANHC as Defendant.[46] ANHC requests that the Court (1) find that ANHC is a "deemed" PHS employee pursuant to 42 U.S.C. § 233(g) and was acting in the scope of its deemed federal employment at the time of the incident alleged in the FACC; (2) find that under 42 U.S.C. § 233(a), Plaintiffs' exclusive remedy is against the United States under the FTCA and ANHC is immune from suit; (3) order the United States to be substituted as the sole named defendant; and (4) dismiss all claims against ANHC with prejudice.[47]

On November 20, 2025, after federal appropriations had been restored, HHS notified the Attorney General of this court case against ANHC.[48]

On November 24, 2025, Plaintiffs filed their motion to remand this matter back to state court.[49]

---

[45] Docket 1 at 1.

[46] Docket 15.

[47] Docket 15-2 at 1-2.

[48] Docket 23-1 at ¶ 2.

[49] Docket 17.

On December 3, 2025, the United States filed a notice in the original state court case.[50] The Government stated that while HHS had deemed ANHC to be a PHS employee, it would neither intervene in nor remove the case because Plaintiffs' claims did not arise out of conduct covered by 42 U.S.C. § 233(a).[51]

On January 7, 2026, the United States filed in this Court its Statement of Interest in Opposition to ANHC's motion to substitute.[52]

## LEGAL STANDARD

This case centers on 42 U.S.C. § 233(a), which provides in relevant part as follows:

> The remedy against the United States provided by [the FTCA] . . . for damage for personal injury, including death, resulting from the performance of medical, surgical, dental, or related functions, including the conduct of clinical studies or investigation, by any commissioned officer or employee of the Public Health Service while acting within the scope of his office or employment, shall be exclusive of any other civil action or proceeding by reason of the same subject-matter against the officer or employee (or his estate) whose act or omission gave rise to the claim.

When a defendant claims that § 233(a) immunity applies, but the Attorney General fails to appear in the action, then pursuant to § 233(*l*)(2), "the civil action or proceeding shall be removed to the appropriate United States district court. The

[50] Docket 22-1.

[51] Docket 22 at 7 (first citing 28 C.F.R. § 15.2(b); and then citing Docket 22-1 at 1-3 (Notice of the United States under 42 U.S.C. § 233(l)(1))).

[52] Docket 24.

civil action or proceeding shall be stayed in such court until such court conducts a hearing, and makes a determination, as to the appropriate forum or procedure for the assertion of the claim for damages described in subsection (a) and issues an order consistent with such determination." The matter must be remanded to the state court if the district court "determine[s] on a hearing on a motion to remand held before a trial on the merit that the case so removed is one in which a remedy by suit within the meaning of [§ 233(a)] is not available against the United States."[53]

## DISCUSSION

The parties dispute five issues. First, Plaintiffs and the United States contend that ANHC's October 23, 2025 removal was procedurally improper because the Attorney General did not receive actual notice of the case until November 20, 2025. Second, the United States asserts that substitution of the United States as the defendant is an improper remedy. Third, Plaintiffs and the United States assert that ANHC is not entitled to immunity pursuant to § 233(a) because Plaintiffs' claims do not relate to a healthcare "related function" and Plaintiffs' claims are not for personal injuries. Fourth, Plaintiffs assert that removal under 28 U.S.C. § 1442 was improper. And fifth, Plaintiffs seek attorneys' fees for ANHC's allegedly improper removal. The Court addresses each argument in turn.

[53] 42 U.S.C. § 233(c).

## I. Timeliness of Removal Pursuant to 42 U.S.C. § 233

Plaintiffs and the United States contend that ANHC had no right to remove this case under § 233 because ANHC never provided notice of this lawsuit directly to the Attorney General, which they maintain is required by § 233(*l*)(1).[54] It appears undisputed that the Attorney General did not receive notice of the action until it was notified of it by HHS on November 20, 2025, after the government shutdown ended.[55] ANHC responds that both Plaintiffs and the United States misinterpret § 233 and its governing regulation.[56]

The Ninth Circuit has characterized § 233's statutory and regulatory scheme as "enormously complicated" and "hardly a model of clarity"; thus, the Court proceeds "with caution."[57] If a deemed healthcare provider is sued in state court, 42 U.S.C. § 233(*l*) provides two avenues for removal to federal court: by the Attorney General after intervening in state court or by the defendant.[58]

Section 233(*l*)(1) directs the Attorney General to file a notice in the state court action "within 15 days after being notified" of a state court action filed against

---

[54] Docket 17 at 9-10; Docket 24 at 8 ("[T]he Attorney General was not notified of the case due to the lapse in appropriations funding the federal government.").

[55] Docket 22-1.

[56] Docket 22 at 10-11.

[57] *Blumberger*, 115 F.4th at 1118, 1126.

[58] 42 U.S.C. § 233(*l*).

a deemed PHS employee. Pursuant to § 233(*l*)(2), "[i]f the Attorney General fails to appear in State court within [15 days], upon petition of [the health care entity], the civil action or proceeding shall be removed to the appropriate United States district court."

In the instant case, ANHC provided notice of the state court action to HHS on October 3, 2025; but ANHC did not provide notice directly to the Attorney General at that time.[59] ANHC's notice is in accordance with both the statute and the applicable regulation, 28 C.F.R. § 15.2. Section § 233(b) provides:

> Any such person [referred to in § 233(a)] against whom such civil action or proceeding is brought shall deliver . . . all process served upon him or an attested true copy thereof to his immediate superior or to whomever was designated by the Secretary to receive such papers and such person shall promptly furnish copies of the pleading and process therein to the United States attorney for the district embracing the place wherein the proceeding is brought, to the Attorney General, and to the Secretary.

Similarly, 28 C.F.R. § 15.2(b) provides that ANHC's obligation is to promptly provide notice of the state court action to "the appropriate Federal agency." "[T]he appropriate Federal agency," which appears twice in the regulation, is HHS.[60]

Plaintiffs, appearing to acknowledge that ANHC was only required to notify

---

[59] Docket 1-4 at 1-4; Docket 22 at 12; *see also* Docket 15 at 2 (citing 42 U.S.C. § 233(*l*)(1)-(2)).

[60] *See* 28 C.F.R. § 15.2(b); *see also Aguilar v. Jacobs*, Case No. 2:24-CV-08715-MRA-MAR, 2025 WL 1177855, at *1 (C.D. Cal. Apr. 23, 2025) ("A deemed entity is required to provide immediate notice of a lawsuit to HHS after that entity has been served." (first citing 42 U.S.C. § 233(b); and then citing 28 C.F.R. § 15.2(b))).

HHS, nonetheless maintain that "[w]hether Defendant followed the correct procedures in attempting to notify the Attorney General is immaterial, because the Attorney General did not in fact receive notice until November 20, 2025."[61] But it was HHS that was required by the statute and by its own regulation to provide copies of all process and pleadings to the Attorney General, not ANHC.

Due to the government shutdown, HHS did not notify the Attorney General until November 20, 2025. However, the exceptional nature of the 2025 federal government shutdown cannot serve as a basis for rejecting ANHC's Notice of Removal as untimely.[62] For if the Court were to adopt Plaintiffs' and the Government's reasoning, ANHC's ability to remove would have been barred by 28 U.S.C. § 1446(b), which requires a Notice of Removal to be filed within 30 days after receipt or service of the complaint.[63] This could "put federally qualified health centers in an impossible Catch-22"[64] because at least one Circuit has held that § 1446(b)'s 30-day time period for removal applies to a § 233 removal.[65] Further,

---

[61] Docket 23 at 3.

[62] *See Am. Fed'n of State, Cnty. & Mun. Emps., AFL-CIO v. U.S. Off. of Mgmt. & Budget*, 807 F. Supp. 3d 1004, 1038 (N.D. Cal. 2025) ("In other words, a government shutdown does not relieve agencies of their statutory obligations.").

[63] 28 U.S.C. § 1446(b); *see also* Docket 34 at 2 ("ANHC does not have to risk default in state court and waive forever ANHC's right to also remove the case under 28 U.S.C. § 1442(a) while waiting around for the government to maybe or maybe not appear.").

[64] Docket 28 at 7-8 (first citing *Allen v. Christenberry*, 327 F.3d 1290, 1295 (11th Cir. 2003); and then citing 28 U.S.C. § 1446(b)).

[65] *See Christenberry*, 327 F.3d at 1295 ("Section 233(*l*)(2) itself does not specify a time limit for removal just as it does not specify which district court is the 'appropriate United States district

the Supreme Court has held that § 1446(b)(1) "speaks in strict, mandatory terms" such that its 30-day requirement is not subject to equitable tolling.[66] Nor did the Government take any action to suspend or toll the 30-day timeline for removal during the government shutdown. Given the unique circumstances presented by the shutdown, the Court finds that ANHC satisfied its notice obligation on October 3, 2025, and timely removed the case thereafter, pursuant to § 233(*l*)(2), when the U.S. Attorney then failed to appear.

## II. Substitution as Relief Under 42 U.S.C. § 233

As relief, ANHC requests that the Court substitute the United States as the defendant in this action.[67] The United States asserts that substitution is improper because no statute authorizes such relief.[68] The Government contends that "forcibly substituting the United States as a defendant in place of" ANHC is functionally equitable relief.[69] And because "ANHC offers no evidence that the remedy it seeks was one 'traditionally accorded by courts of equity' . . . the proper

---

court' for removal. Those matters are left to the general removal statute, which is 28 U.S.C. § 1446(b)." (first citing 42 U.S.C. § 233(*l*)(2); then citing *Things Remembered, Inc. v. Petrarca,* 516 U.S. 124, 129 (1995); and then citing *Lazuka v. FDIC,* 931 F.2d 1530, 1536 (11th Cir. 1991))).

[66] *Enbridge Energy, LP v. Nessel*, 608 U.S. 67, 71, 76 (2026) ("Because § 1446(b)(1)'s text, structure, and context are inconsistent with equitable tolling, Enbridge's removal was untimely and remand to the Michigan state court is required.").

[67] Docket 15 at 1 (first citing 42 U.S.C. § 233(*l*)(2); and then citing 42 U.S.C. § 233(b)).

[68] Docket 24 at 8-15.

[69] Docket 24 at 9.

remedy at law for a party claiming statutory immunity to suit is, and always has been, *dismissal*, not party replacement."[70] The Government also asserts that "ANHC's 'motion' does not explain under what provenance, statutory or otherwise, this Court might enter the order it requests."[71] In addition to multiple federal statutes, the Government also cites to a case from the Eastern District of California that applied this rationale in a substantially similar context to find that it lacked the statutory authority to force the substitution of the United States.[72]

ANHC asserts that the United States' "hyper-technical procedural argument" against its substitution fails for three reasons.[73] First, it maintains the Government's argument is inconsistent with binding Ninth Circuit precedent in *Friedenberg* and *Blumberger*.[74] Second, ANHC emphasizes that *Hinds*, cited by the Government in support, "is an unpublished district court opinion that predates both *Friedenberg* and *Blumberger*" without precedential effect.[75] And third,

---

[70] Docket 24 at 9 (emphasis in the original) (first citing *Trump v. CASA, Inc.*, 606 U.S. 831, 841-42 (2025); then citing *Grupo Mexicano de Desarrollo S.A. v. All. Bond Fund, Inc.*, 527 U.S. 308, 319 (1999).

[71] Docket 24 at 9.

[72] Docket 24 at 15 (citing *Hinds v. Cmty. Med. Ctrs., Inc.*, Case No. 22-cv-01207, 2022 WL 17555525 at *2-3 (E.D. Cal. Dec. 9, 2022)); *see id*. at *2 (holding that rather than forcible substitution, an employee could (1) independently pursue a defense or (2) file suit under the Administrative Procedure Act).

[73] Docket 28 at 9-10.

[74] Docket 28 at 9-10 (first citing 68 F.4th 1113, 1118 (9th Cir. 2023); and then citing 115 F.4th at 1117).

[75] Docket 28 at 10. (citing 42 U.S.C. § 233(b))).

according to ANHC, the United States' interpretation of § 233 is contrary to the text of § 233(b), (g)(1)(A), and (*l*)(2), and as well the interpretation by other courts of the statute.[76]

In *Friedenberg*, the Ninth Circuit conclusively resolved this issue in this Circuit. Substitution is clearly an appropriate remedy:

> PHS employees are granted immunity from certain claims arising out of their performance of "medical, surgical, dental or related functions." 42 U.S.C. § 233(a). *When § 233 immunity applies, the United States is substituted as the defendant* and the action proceeds as one brought under the Federal Torts Claims Act ("FTCA"), 28 U.S.C. §§ 2671–2680.[77]

Indeed, the Ninth Circuit in *Friedenberg* granted precisely such relief: "Because we hold that Defendants' conduct qualifies as a 'related' function under § 233, we reverse the district court's remand order and direct the district court, on remand, to substitute the United States as the defendant."[78]

---

[76] Docket 28 at 10-11. *See, e.g.*, *Marshall v. Lamoille Health Partners, Inc.*, Case No. 2:22-CV-166, 2023 WL 2931823, at *4 (D. Vt. Apr. 13, 2023) ("When immunity applies, the health center is entitled to 'substitution of the United States as the defendant if [the] suit concerns actions within the scope of [its] employment as a deemed federal employee.'" (alterations in original) (quoting 42 U.S.C. § 233(a))); *Mele v. Hill Health Ctr.*, Case No. 3:06-CV-455, 2008 WL 160226, at *3 (D. Conn. Jan. 8, 2008) ("The defendants' motion to substitute the United States as defendant is granted with respect to the claims for deliberate indifference to medical needs and the disclosure of medical information.").

[77] *Friedenberg*, 68 F.4th at 1118 (emphasis added).

[78] *Id.* (citing 42 U.S.C. § 233(a)).

The Government's notice of supplemental authority cites *Hale v. ARcare, Inc*. as persuasive authority. Docket 32 at 2 (citing 167 F.4th 995 (8th Cir. 2026)). Yet in *ARcare*, even though the defendant's motion to substitute was denied, the Eighth Circuit evidently saw substitution as a possible remedy as it stated: the United States "argues, at the end of the brief, that 'Section 233 Does Not Provide Authority to Compel Substitution of the United States,' citing no supporting

Accordingly, if ANHC is entitled to immunity under § 233(a), the United States shall be substituted as the defendant in this action.

### III. "Deemed" Status

The United States maintains that ANHC's "deeming" status under § 233(a) cannot "be applied to data services."[79] According to the Government's interpretation, ANHC was "deemed" a federal entity only "for those enumerated services for which it sought grant funds," which consisted of "required primary health services" and potential "additional health services."[80]

Pursuant to § 330 of the PHSA, ANHC is a federally funded health center and a "deemed entity" as defined under § 233(g).[81] The Government correctly observes that HHS's "deeming decision, however, does not automatically

---

judicial authority on this FSHCAA issue." *Hale*, 167 F.4th at 999; *see also Ford v. Sandhills Med. Found., Inc.*, 97 F.4th 252, 262 (4th Cir. 2024) ("And because § 233(a) does not apply, the United States cannot be substituted for Sandhills as the defendant."), *cert. denied*, 145 S. Ct. 1308 (2025).

[79] Docket 24 at 16-17 ("[W]hen ANHC submitted its 'deeming' application to HHS, and HHS approved it, ANHC was 'deemed' for those enumerated services for which it sought grant funds when it applied for funding under § 254(b). By law, those services could not and did not include data security, information technology, or related cybersecurity services.").

[80] Docket 24 at 16-17 (first citing 42 U.S.C. § 233(g)(1)(B)-(C); and then citing 42 U.S.C. § 254b(a)(1)(A)-(B)).

[81] 42 U.S.C. § 254b; Docket 1-3 ("Deeming Notice"). The parties do not dispute that ANHC was a "deemed" federal entity in August 2025. Docket 15-1 at 14 ("The first prong is undisputed: ANHC has been deemed since 2010, and the alleged incident occurred in August 2025."); Docket 22 at 7 ("[T]here is no question that ANHC was a deemed entity . . . during the relevant time frame.").

immunize a covered entity or employee from" any particular suit.[82] However, the Government conflates "the distinction between the Secretary [of HHS]'s prospective *deeming* decision and the Attorney General's ex-post *coverage* determination."[83]

As explained by the Ninth Circuit in *Blumberger, "*deemed" and "covered" are different determinations made by different department heads.[84] "The deeming decision is made [by the Secretary] before any litigation is filed; it is an ex-ante determination made on a yearly basis as to an employee's status."[85] "Deemed" "denotes whether the Secretary has determined that a qualified entity's employees have PHS status for a 'calendar year.'"[86] "Covered" denotes "whether the Attorney General has determined that a PHS employee was acting within the scope of his employment 'at the time of the incident out of which the suit arose.'"[87]

Here, the parties dispute whether Plaintiffs' claims are "covered" under § 233(a). That the Secretary previously deemed ANHC to be accorded PHS status is a distinct determination that is not dispositive of the present dispute.

---

[82] *Blumberger*, 115 F.4th at 1118.

[83] *Id.* at 1127 (emphasis added).

[84] *Id.* at 1127-28.

[85] *Id.* at 1127 (citing 42 U.S.C. § 233(g)(1)(A)).

[86] *Id.* at 1128 (quoting 42 U.S.C. § 233(g)(1)(A)).

[87] *Id.* (quoting 42 U.S.C. § 233(c)).

Accordingly, the Court disagrees with the United States' assertion that § 233(a) is "inapplicable on its face" based on the Secretary's deeming determination.[88]

### IV. 42 U.S.C. § 233(a)

Section § 233(a) provides that the FTCA's protections extend to PHS officers and employees for damages resulting from "the performance of medical, surgical, dental, or related functions . . ."[89] The parties do not dispute that ANHC's allegedly tortious conduct is not a "medical, surgical, or dental" "function" within the meaning of § 233(a). Thus, ANHC is only entitled to FTCA coverage and absolute immunity if ANHC's allegedly tortious conduct with respect to the August 2025 cyberattack is a "related function[]" within the meaning of § 233(a).

Plaintiffs and the United States raise multiple arguments as to why § 233 should not apply to Plaintiffs' data breach claims, each of which this Court addresses in turn.

#### a. "Personal Injury"

Plaintiffs and the United States assert that § 233(a) only provides immunity for "personal injury" claims, and not claims for injuries to property and economic losses, which they maintain is the only monetary relief that Plaintiffs seek.[90] In

---

[88] *See* Docket 24 at 17.

[89] *Castaneda*, 559 U.S. at 805-06 (quoting 42 U.S.C. § 233(a)) (describing § 233(a) immunity as a form of "absolute immunity" that "bar[s] all actions" against deemed entities for covered conduct).

[90] Docket 24 at 15 ("Plaintiffs' claims for property damage, pure economic loss, and injunctive or other equitable relief are not covered by § 233(a)."); Docket 17 at 7 ("Representative Plaintiffs'

support, the Government cites to dictionary definitions of “personal injury” and the district court’s decision in *Marshall v. Lamoille Health Partners, Inc.* for the proposition that economic harms do not constitute “personal injury.”[91] ANHC responds with a dictionary definition of “personal injury” that includes emotional harms as “personal injury.”[92]

As relevant here, Plaintiffs’ FACC alleges emotional and economic injuries, and harms relating to invasion of privacy.[93] In *Lamoille Health Partners, Inc.*, also a data breach case, the District of Vermont considered the “threshold question [of] whether [the plaintiff] is asserting the sort of ‘personal injury’ covered by the statute.”[94] In the portion quoted by the Government, the district court summarized the plaintiff’s complaint, which alleged primarily economic harms.[95] But the district court then recognized that the plaintiff also alleged emotional distress harms, which “Vermont law has construed as an 'injury to the person,'“ and concluded that

claims stem from [ANHC’s] improper storage of their private information, which is administrative in nature, and their damages are for injuries to property and economic losses—not personal injuries.”)

[91] Docket 24 at 15-16 (first citing *Personal Injury*, Webster’s Third New International Dictionary (unabr. ed. 1968); then citing *Injury*, Black’s Law Dictionary (11th ed. 2019); and then citing Case No. 2:22-CV-166, 2023 WL 2931823, *2 (D. Vt. Apr. 13, 2023)).

[92] Docket 28 at 13 (citing *Injury*, Black’s Law Dictionary (8th ed. 1999) (defining “personal injury” to include “[a]ny invasion of personal right, including mental suffering and false imprisonment”)).

[93] *See supra* note 36.

[94] *Lamoille Health Partners, Inc.*, 2023 WL 2931823, at *2.

[95] *Id.*

the plaintiff's complaint therefore "arguably asserts at least one claim of personal injury."[96]

In *Ford*, the plaintiff brought "claims for negligence, breach of implied contract, invasion of privacy, and breach of confidentiality" against her medical provider "for failure to properly maintain her [PII/PHI]."[97] There, the harms were the same economic, privacy, and emotional harms as alleged by Plaintiffs here. The Fourth Circuit considered these damages to constitute "personal injuries" in its § 233(a) analysis, even while determining that § 233(a) did not apply to the plaintiffs' data breach claims.[98] The Court finds that Plaintiffs' alleged injuries and, particularly, their alleged injuries of emotional distress, constitute "personal injuries" for purposes of § 233(a).

**b. Medical Malpractice**

Plaintiffs and the United States contend that § 233(a) only covers "medical malpractice and limited other cases" and does not apply to Plaintiffs' data breach claims against ANHC.[99] Plaintiffs point to § 233(a)'s statutory history as support

---

[96] *See id.* at *2 (citing *Fitzgerald v. Congleton*, 583 A.2d 595, 599-600 (1990)). Likewise, under Alaska law, a plaintiff may bring a tort claim for the negligent infliction of emotional distress even in the absence of physical injury. *Chizmar v. Mackie*, 896 P.2d 196, 214 (Alaska 1995).

[97] *Ford*, 97 F.4th at 254-55.

[98] *Id.* at 257-62.

[99] Docket 17 at 10; Docket 24 at 23.

for this argument.[100]

ANHC correctly notes that this argument has already been rejected by the Ninth Circuit in *Friedenberg*. The alleged tortious conduct in *Friedenberg* was the defendants' "failure to notify the municipal court of [the health center's patient's] violations of his probation order by failing to comply with his mental health treatment plan," where a state court had ordered the patient into a jail diversion program which required him to "follow all directives of [the health center]."[101] After the patient killed multiple third-parties, the plaintiffs, the estates of the decedents, brought negligence and wrongful death claims against the federally supported health center and the health center's employees "for violating their duty to report a court-ordered . . . patient's refusal to comply with the medical terms of his probation."[102] Notably, the defendants in *Friedenberg* included not just mental health care providers, but an administrator at the health center.[103] After the defendants removed the matter to federal court, the plaintiffs argued that the defendants' failure to report the patient's treatment violations in his probation order

[100] Docket 17 at 11-13.

[101] *Friedenberg*, 68 F.4th at 1119, 1128.

[102] *Id.* at 1118-19.

[103] *Id.* at 1123 ("The removal notice states that the individual Defendants are comprised of an administrator and mental health providers.").

to the municipal court was not a "related function" under § 233(a).[104] The district court agreed, concluding that § 233(a) immunity did not apply and remanded the case back to state court.[105]

The Ninth Circuit reversed and held that the health center and its employees were entitled to § 233(a) immunity because when "§ 233(g)(1)(B) is read in conjunction with § 233(g)(1)(A) and § 233(a), . . . [t]he statutory text clearly shows that immunity is not tied to whether the tort transpired in caring for the patient. Rather . . . as long as a claim is *derived* from providing services to subjects of the health care provider, the deemed PHS employee is immune from suit."[106] The majority further reasoned that the employees' failure to report was sufficiently "intertwined with their provision of medical services" so as to constitute a "related function."[107]

Plaintiffs are correct that Congress passed the FSHCAA because of burgeoning medical malpractice insurance costs. But in *Friedenberg*, the Ninth Circuit expressly rejected the argument "that § 233 was enacted to cover only medical malpractice claims."[108] "While Congress's concerns regarding malpractice

---

[104] *Id.* at 1119, 1125-26.

[105] *Id.* at 1125.

[106] *Id.* at 1127 (emphasis in original).

[107] *Id.* at 1130.

[108] *Id.* at 1127.

insurance premiums were the driving force behind the legislation, Congress did not limit § 233 immunity to 'only' malpractice claims when it could have."[109] "[T]he scope of § 233 immunity does not depend on whether the claim is framed as one of medical malpractice, but rather whether the claim is the result of defendant's 'performance of medical, surgical, dental or related functions' in providing services to both patients and nonpatients alike."[110]

#### c. Sovereign Immunity Canon

Plaintiffs maintain that because granting immunity to a health center under § 233(a) results in the substitution of the United States as the defendant, this Court should apply the "sovereign immunity canon" to narrowly construe the scope of § 233(a) immunity.[111] The Court is not persuaded by Plaintiffs' argument, as the Ninth Circuit in *Friedenberg* makes no reference to this canon when addressing the scope of § 233(a) immunity.

#### d. Patient Data Protection as a Related Function

Plaintiffs and the United States repeatedly assert that an administrative duty

---

[109] *Id.* at 1128 (first citing *Cuoco v. Moritsugu*, 222 F.3d 99, 108 (2d Cir. 2000)); and then citing *Logan v. St. Charles Health Council, Inc.*, Case No. 1:06CV00039,.2006 WL 1149214, at *2 (W.D. Va. May 1, 2006)).

[110] *Id.* (quoting 42 U.S.C. § 233(a), (g)).

[111] Docket 17 at 15 ("And, even if the scope of § 233(a) were uncertain, the sovereign-immunity canon precludes ANCH's [*sic*] expansive reading of the statute to embrace data-breach claims." (first citing *Jackson v. United States*, Case No. 2:20-CV-02347 WBS AC, 2021 WL 2682044, at *2 (E.D. Cal. June 30, 2021); then citing *Ruckelshaus v. Sierra Club*, 463 U.S. 680, 681 (1983); and then citing *Adeleke v. United States*, 355 F. 3d 144, 147 (2d Cir. 2004))).

such as ensuring patient data security cannot give rise to § 233(a) immunity.[112] They assert that the acts or omissions giving rise to ANHC's data breach "were not 'specially fitted' to the work of doctors, surgeons, dentists, or similar medical professions."[113] Instead, they maintain that because the conduct at issue here is "the work of network administrators, information technology specialists and corporate compliance officers who never see or directly interact with patients," § 233(a) immunity cannot apply.[114]

The Court will apply the Ninth Circuit's construct of the statute in *Friedenberg*.[115] As explained by the Ninth Circuit, "Section 233 immunity does not turn on *who* brings the claim, and neither does it require that the alleged tort occur during the provision of [health care] services."[116] "Rather, the language illustrates that as long a claim is *derived* from providing services to subjects of the healthcare provider, the deemed PHS employee is immune from suit."[117] As a result, "related

[112] *See, e.g.*, Docket 17 at 22 ("The breach arose during technological and administrative services, not medical care."); Docket 23 at 5 ("Safeguarding patient data is a wholly administrative duty, and does not pertain to any medically related functions.").

[113] Docket 23 at 4 (quoting *Function*, Webster's Third New International Dictionary (unabr. ed. 1968)).

[114] Docket 23 at 4.

[115] *Friedenberg*, 68 F.4th at 1127 ("The statutory text clearly shows that immunity is not tied to whether the tort transpired in caring for the patient.").

[116] *Id.* at 1118 (emphasis in original).

[117] *Id.* at 1127 (emphasis in original).

functions" as used in § 233(a) could include an administrative activity, such as cybersecurity, if it is sufficiently related to the provision of medical, dental, or surgical healthcare.[118]

Applying that construct in *Friedenberg*, the Ninth Circuit held that reporting to a court—which is not the provision of a medical service to a patient but rather an administrative activity—was nonetheless a "related function" under § 233(a) because the conduct "had a distinct connection to the provision of medical, surgical, or dental services."[119]

## V. Federal Grant Requirements

ANHC emphasizes that safeguarding its patients' records is a requirement of its federal grant funding.[120] ANHC reasons that because it "operates under detailed federal requirements, oversight, and control" as to patient data, the collecting, maintaining, and securing of electronic health records is "integrally interwoven with modern medical care."[121]

The Government characterizes ANHC's discussion of "federal grant

---

[118] *See C.K. v. United States*, Case No. 19-CV-2492 TWR (RBB), 2020 WL 6684921, at *5-6 (S.D. Cal. Nov. 12, 2020) ("administrative or operational duties could qualify as related functions where they were connected to the provision of medical care").

[119] *Friedenberg*, 68 F.4th at 1130.

[120] Docket 15-1 at 11 (first quoting 42 U.S.C. § 254b(k)(3)(C); and then citing 42 C.F.R. §§ 51c.110, 51c.303(b)).

[121] Docket 15-1 at 11, 14.

requirements, studies regarding the impact of cybersecurity on modern medicine, and the importance of protecting patient privacy" as "ancillary matters."[122] The Government reasons that "prerequisites to receiving federal grant funding require it to have systems in place to protect the confidentiality of patient records" but "do not govern the scope of immunity under § 233(a)."[123]

The Court agrees with the United States that a federal grant requirement does not conclusively establish that the requirement is a "related function" under § 233(a). And yet the multitude of obligations imposed upon federally funded health centers demonstrates that the protection of PHI/PII is unlike traditional cybersecurity in other industries and supports a determination that the protection of this information is a function related to the provision of medical services under § 233(a).[124] As ANHC notes, under the FSHCAA, in order to retain its deemed PHS employee status, the health center must maintain "an ongoing quality improvement system that includes clinical services and management, and that maintains the confidentiality of patient records."[125] And by regulation, federally funded health centers must "[i]mplement a system for maintaining the

---

[122] Docket 24 at 19.

[123] Docket 24 at 21.

[124] *See supra* Section I (Statutory Background).

[125] 42 U.S.C. § 254b(k)(3)(C).

confidentiality of patient records."[126] Further, when the HITECH Act's "Meaningful Use Program" ("MUP")[127] regulations were adopted in 2010, HHS explained that "[c]ertified EHR technology used in a meaningful way is one piece of a broader [HealthIT] infrastructure needed to reform the healthcare system and *improve healthcare quality*, efficiency, and patient safety."[128] The Cures Act extended that further, mandating "interoperability" in HealthIT and prohibiting "information blocking" in a patient's EHR.[129] HHS has stated that the Cures Act provisions "are designed to advance interoperability" and "support the access, exchange, and use of electronic health information."[130] And under HIPAA, a "healthcare provider who transmits health information in electronic form," including federally qualified health centers, must abide by HIPAA's patient privacy and confidentiality requirements.[131]

Further, ANHC correctly notes that "Alaska law similarly mandates providers

---

[126] 42 C.F.R. § 51c.303(b); *see also id.* § 51c.110.

[127] 42 C.F.R. § 495.4; *see also Doe v. Cedars-Sinai Health Sys.*, 106 F.4th 907, 910-11 (9th Cir. 2024).

[128] Medicare and Medicaid Programs; Electronic Health Record Incentive Program, 75 Fed. Reg. 44314, 44321 (July 28, 2010) (emphasis added).

[129] 21st Century Cures Act: Interoperability, Information Blocking, and the ONC Health IT Certification Program, 85 Fed. Reg. 25642, 25643-47 (May 1, 2020).

[130] *Id.* at 25643.

[131] 42 U.S.C. §§ 1320d-1 (applying HIPAA standards to a "healthcare provider who transmits any health information in electronic form"); 42 U.S.C. § 1395x(s)(E), (aa) (defining HIPAA covered healthcare provider to include a "Federally qualified health center"); *see also* Docket 1-1 ¶¶ 120-23 (asserting negligence per se claim against ANHC based on alleged HIPAA violations).

to collect and maintain accurate patient records as part of their professional obligations," an additional indication that patient record-keeping is a "related function" to the provision of health care services under § 233(a).[132]

## VI. Cases Interpreting 42 U.S.C. § 233

Numerous courts have considered the scope of § 233 in different contexts. ANHC focuses on the Ninth Circuit's decision in *Friedenberg*, asserting this case raises "the same basic issue."[133] ANHC also cites to several district court cases where federal courts applied § 233(a) and substituted the United States for a federally funded health center as the defendant.[134]

In *Mele v. Hill Health Center*, described as "instructive" by the *Friedenberg* majority, a criminal defendant "was ordered to participate in a health center's federally funded health program that provided behavioral health services for individuals with substance abuse."[135] However, he was ultimately terminated from the program because he violated his treatment plan. He then sued the center for, among other claims, improperly disclosing his medical information to a hospital

---

[132] Docket 15-1 at 23 (citing Alaska Admin. Code tit. 12, § 40.967(9)-(12)).

[133] Docket 15-1 at 14.

[134] Docket 15-1 at 22-23 (first citing *Mele*, 2008 WL 160226, at *3; then citing *Doe v. Neighborhood Healthcare*, Case No. 21-cv-1587, 2022 WL 17663520 at *7 (S.D. Cal. Sept. 8, 2022); then citing *Krandle v. Refuah Health Ctr., Inc.*, No. 22-cv-4977, 2024 WL 1075359, at *9-10 (S.D.N.Y. Mar. 12, 2024); and then citing *Kezer v. Penobscot Cmty. Health Ctr*., Case No. 15-cv-225, 2019 WL 141566, at *8 (D. Me. Mar. 21, 2019)).

[135] *Friedenberg*, 68 F.4th at 1128 (citing *Mele v. Hill Health Ctr.*, 609 F. Supp. 2d 248, 254 (D. Conn. 2009)).

and a to substance abuse foundation. The district held that this wrongful disclosure claim was a "related function of ensuring the privacy of patient medical information" and was therefore covered by § 233(a).[136]

More closely on point, in *Doe v. Neighborhood Healthcare*, the District Court for the Southern District of California found that § 233(a) applied to data breach claims against a federally funded health center. The court explained that although the health center's "failure to maintain and protect the confidential information from unauthorized access was not done in the actual rendering of medical treatment, it is a related function because maintaining confidential personal and health information is necessary to effectively treat patients."[137]

The Southern District of New York reached a similar conclusion in *Krandle v. Refuah Health Center*. The federally funded health center defendant in *Krandle* was the victim of a cyberattack when third parties accessed its systems and extracted PII/PHI.[138] The plaintiffs alleged that the defendant acted negligently by failing to safeguard their PII/PHI.[139] The district court interpreted § 233(a) as

---

[136] *Mele*, 2008 WL 160226, at *3.

[137] *Neighborhood Healthcare*, 2022 WL 17663520, at *7.

[138] *Krandle*, 2024 WL 1075359, at *1.

[139] *Id.* at *1; *see also id.* at *9 ("That panoply of regulations demonstrates that [the defendant] has a particular responsibility to secure data from internal and external threats in its capacity as a deemed entity.").

covering the plaintiff's data breach claim.[140] The court explained that "medical," "surgical," and "dental" are "adjectives that *pertain* or *relate* to treatment," but "they are not exclusively defined *by* treatment."[141] The broad term "related" requires only "a real relationship to the practice of medicine," and the health center's "responsibility to secure data from internal and external threats . . . is essential to the practice of medicine."[142]

These district court cases stand for the proposition that conduct by health care facilities relating to the protection of their patients' electronic health care records is sufficiently tied to the provision of medical services so as to constitute a related function for purposes of § 233(a). And yet Plaintiffs and the United States correctly observe that both *Neighborhood Healthcare* and *Krandle* relied on the district court's decision in *Ford v. Sandhills Medical Foundation, Inc.*, a decision that was subsequently reversed by the Fourth Circuit.[143]

In *Ford,* the Fourth Circuit held that § 233(a) immunity does not extend to

---

[140] *Id.* at *2-6.

[141] *Id.* at *4 (emphasis in original).

[142] *Id.* at *5, 9.

[143] Docket 24 at 22 ("But the first case, *Doe*, relied on the reasoning of district court decisions that *Ford* reversed or abrogated, and *Krandle*, in turn, relied on the discredited reasoning of *Doe*."); *see Neighborhood Healthcare*, 2022 WL 17663520, at *7; *Krandle*, 2024 WL 1075359, at *2-5, 9; *Ford v. Sandhills Med. Found., Inc.*, Case No. 4:21-CV-02307-RBH, 2022 WL 1810614 (D.S.C. June 2, 2022), *vacated and remanded*, 97 F.4th 252 (4th Cir. 2024).

data breach claims against federally funded health centers.[144] In *Ford*, a health center was subjected to a cyberattack similar to the one at issue here. A former patient sued the center for claims arising from data breach. The health center argued, like ANHC, that it should be immune from suit and the United States must be substituted for it as the defendant.[145] The district court found that § 233(a) encompassed the plaintiff's data breach claims.[146] But the Fourth Circuit reversed and held that the scope of "related functions" in § 233 did not cover data breaches at the health center.[147]

The Fourth Circuit interpreted § 233(a)'s "related functions" language as limited to "field[s] of health care"[148] and therefore as not extending to other activities that are "proper for a federally funded health center,"[149] such as data security. It reasoned that the plain meaning of "related functions" is limited to another category in the field of health care services distinct from medicine, surgery, or dentistry—the terms that precede "related functions" in § 233(a).[150]

---

[144] *Ford*, 97 F.4th at 262.

[145] *Id.* at 256.

[146] *Ford*, 2022 WL 1810614, at *4-6.

[147] *Ford*, 97 F.4th at 260 ("[The term] 'related functions' explicitly encompasses only the provision of health care.").

[148] *Id.* at 261.

[149] *ARcare*, 167 F.4th at 1002.

[150] *Ford*, 97 F.4th at 259.

Similar to *Ford*, the issue in *ARcare* was whether § 233(a)'s "absolute statutory immunity extends to patient damage actions for losses caused when an unauthorized third party breached [the health center's] data network and gained access to patients' confidential information."[151] The Eighth Circuit reached the same conclusion as the Fourth Circuit, holding that the term "related functions" in § 233(a) refers only to "a field of health care outside of medicine, surgery, or dentistry."[152] While the *ARcare* court acknowledged that "data security is now integrated into the modern practice of medicine with the transition to electronic medical records, it [concluded that] is not itself a field of health care."[153] In its decision, the Eighth Circuit specifically acknowledged the Ninth Circuit's decision in *Friedenberg,* but found that *Ford* was "more persuasive."[154]

ANHC urges the Court to reject *ARcare*, asserting that it "rejects binding Ninth Circuit precedent and adopts an unduly restrictive interpretation of the phrase 'related functions' that cannot be reconciled with that precedent" and that it "recognizes 'data security is now integrated into the practice of medicine' but then fails to analyze the tenet of statutory construction that statutory language is

[151] *ARcare*, 167 F.4th at 998. In its supplemental notice, the Government asserts that *Arcare* "supports the United States' argument regarding interpretation of 42 U.S.C. § 233(a)." Docket 32 at 2 (citing Docket 24 at 15-27).

[152] *ARcare*, 167 F.4th at 1001-02 (quoting *Ford*, 97 F.4th at 259).

[153] *Id.* at 1001-02.

[154] *Id.* at 1001.

not frozen in time but should instead be interpreted in light of new applications to existing language."[155]

Plaintiffs and the United States also point to other district courts that have found that data-breach actions do not arise from the "performance of medical, surgical, dental, or related functions." Among those, *In re Community Clinic of Maui Data Breach Litigation* is particularly instructive.[156] There, the District of Hawaii addressed whether § 233(a) applied to an action against a deemed health center arising from a cyberattack with allegations substantially similar to those in this case.[157] Interpreting *Friedenberg*, the district court concluded that "[t]he duty to maintain the security of stored data is not 'intertwined' with medical treatment in the way services provided by a medical professional are."[158]

Plaintiffs also cite to the Southern District of California's recent decision in *Ramirez v. Imperial Beach Community Clinic*.[159] In *Ramirez*, the plaintiff, who was a patient of the defendant, a health care services provider, filed a putative class action complaint alleging that the defendant failed to properly safeguard its

---

[155] Docket 34 at 1 (citing *ARcare*, 167 F.4th at 1001).

[156] Case No. 24-00431 MWJS-WRP, 2025 WL 1863106 (D. Haw. July 7, 2025).

[157] *Maui*, 2025 WL 1863106 at *1-3.

[158] *Id.* at *11.

[159] Docket 43 at 2 (citing Case No. 3:26-cv-1326-CAB-JLB, 2026 WL 1300568 (S.D. Cal. May 12, 2026)); Docket 43-1 at 2-10.

patients' personal information stored in its EHR.[160] The district court found that the defendant's electronic storage of the plaintiff's personal information and medical data was not a related function within the meaning of § 233(a), because its data storage legal duty was not "tied to [the defendants'] status as medical health professionals" and did not have a "distinct connection to the provision of [health care]."[161] Accordingly, the district court concluded that "[t]he duty to maintain the security of stored data is . . . not 'intertwined' with medical treatment."[162]

This court disagrees with both the District of Hawaii and the Southern District of California's application of *Friedenberg*. "Intertwined" means "to be connected in a complicated way that makes something difficult to separate."[163] Applying this definition, ANHC's protection of its patients' health care records is clearly "intertwined with the provision of medical care."[164] Plaintiffs allege that as a condition of obtaining medical treatment, they had to grant ANHC access to their

---

[160] *Ramirez*, 2026 WL 1300568, at *1.

[161] *Id.* at *3 (quoting *Friedenberg*, 68 F. 4th at 1130.

[162] *Id.* at *3.

[163] *Intertwined*, Cambridge Dictionary, https://dictionary.cambridge.org/us/dictionary/english/intertwined (last visited Sept. 15, 2026); *see also Intertwined,* Dictionary.com, https://www.dictionary.com/browse/intertwined ("closely or inseparably involved with each other, or consisting of elements connected in this way") (last visited Sept. 15, 2026).

[164] *Friedenberg*, 68 F.4th at 1130.

PII/PHI.[165] The Ninth Circuit has previously saliently summarized the medical purpose that electronic health records serve: "Congress intended for these digital records—commonly referred to as electronic health records ("EHRs")—to reduce medical errors and improve quality of care, permitting patients and providers to easily view and access a patient's medical history and facilitating the transfer of those records between facilities."[166]

Here, Plaintiffs' harms are derived from lost EHR data that contains "medical information (e.g., symptoms, diagnoses, treatment, photographs)" from medical providers, which arose out of the patient-provider relationship.[167] And ANHC's duty "to secure their PII/PHI" requires its use of EHR systems. The federal government has made secure electronic health care recordkeeping by federally funded health centers a related function to the provision of medical care through "an interlocking framework that mandates certified EHR use, governs electronic health information exchange, and imposes cybersecurity safeguards as conditions of lawful care."[168] In short, ANHC's duty to safeguard its patients' electronic health

[165] Docket 1-1 at ¶¶ 100, 126, 160.

[166] *Cedars-Sinai Health Sys.*, 106 F.4th at 910.

[167] Docket 1-1 at ¶ 29. Based on Plaintiffs' FACC, the hacked data included medical information that was likely entered by ANHC's medical and/or non-medical staff.

[168] Docket 28 at 14-15 (first citing Medicare & Medicaid Programs; Electronic Health Record Incentive Program, 75 Fed. Reg. 44314, 44319–20 (July 28, 2010); and then citing 21st Century Cures Act: Interoperability, Information Blocking, and the ONC Health IT Certification Program, 85 Fed. Reg. at 25644–45).

care records has a distinct and direct connection to its provision of health care services.

Plaintiffs dispute that *Friedenberg* extends as broadly as ANHC asserts and correctly highlight that *Friedenberg* was predicated on a claim for wrongful death.[169] And the Government has valid reason to be concerned that "'inextricably interwoven' is a boundless concept that, taken to its logical conclusion, offers no limiting principle."[170]

But the Court's decision here is limited to Plaintiffs' claims that ANHC "'fail[ed] to protect' their PII/PHI because ANHC 'failed to adequately train its employees on cybersecurity and failed to maintain reasonable safeguards or protocols.'"[171] Pursuant to *Friedenberg*, "[t]he statutory text clearly shows that immunity is not tied to whether the tort transpired in caring for the patient. Rather . . . as long as a claim is *derived* from providing services to subjects of the health care provider, the deemed PHS employee is immune from suit."[172] This Court finds that Plaintiffs' data breach claims are derived from ANHC providing medical care to Plaintiffs and are thus a "related function" under 42 U.S.C. § 233(a).

Accordingly, ANHC's immunity is "identical to the immunity for true PHS

---

[169] Docket 17 at 18-19.

[170] Docket 24 at 26.

[171] Docket 24 at 6 (quoting Docket 1-1 at ¶¶ 1-7).

[172] *Friedenberg*, 68 F.4th at 1127 (emphasis in original).

employees."[173] ANHC's Motion for Substitution at Docket 15 is **GRANTED**. Pursuant to 42 U.S.C. § 233(*l*)(2) and § 233(b), the United States is substituted for ANHC as the sole defendant in the above-captioned case.

Because the Court has determined that removal was proper under 42 U.S.C. § 233, the Court does not reach ANHC's alternative bases for removal under 28 U.S.C. §§ 1331 and 1442.[174] Accordingly, Plaintiffs' Motion to Remand to State Court at Docket 17 is **DENIED** as is Plaintiffs' request for attorneys' fees in connection with Plaintiffs' motion for remand.[175]

**CONCLUSION**

In light of the foregoing, IT IS ORDERED THAT:

1. ANHC's Motion for Substitution at Docket 15 is **GRANTED.** The Clerk of Court shall substitute the United States in this action as the sole Defendant in place of Anchorage Neighborhood Health Center, Inc. pursuant to 42 U.S.C. § 233(a); and

2. Plaintiffs' Motion to Remand to State Court at Docket 17 is **DENIED.**

DATED this 16th day of September, 2026, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[173] *Blumberger*, 115 F.4th at 1117.

[174] *See* Docket 1 at ¶ 14.

[175] Docket 17 at 25.